ALEXANDER SAVAGE v. L. D. KNIGHT and E. M. BRYANT, Trustee.

*Fraudulent Conveyance—Intent.*

1. Where, in a voluntary assignment to secure creditors, a debtor has the intent to hinder and delay one certain creditor, the deed is fraudulent and void, although neither the trustee nor the beneficiaries under the deed participated in or knew of such fraudulent intent.

2. Where the conveyance is absolute and for a valuable consideration, it is not fraudulent and void as to creditors although the grantor had a fraudulent intent in its execution, unless the grantee participated in such intent.

3. Where a deed is fraudulent and void as to one creditor, it is void as to all.

4. Where the validity of a deed alleged to be fraudulent depends upon the intent with which it was made, such intent is a fact to be submitted to the jury.

(*Hafner* v. *Irwin*, 1 Ired., 490; *Lee* v. *Flannagan*, 7 Ired., 471; *Cansler* v. *Cobb*, 77 N. C., 30; *Reiger* v. *Davis*, 67 N. C., 185; *Lassiter* v. *Davis*, 64 N. C., 498, cited and approved; *Brannock* v. *Brannock*, 10 Ired., 428; *Harris* v. *DeGraffenreid*, 11 Ired., 89, and *Morris* v. *Pearson*, 79 N. C., 253, distinguished and commented on).

CIVIL ACTION tried before *Gudger, Judge,* at Fall Term, 1884, of EDGECOMBE Superior Court.

The action was for the recovery of the land described in the complaint, originally brought against Knight, and subsequently, Bryant, by leave of Court, was made defendant, and claimed under a deed of trust to him from his co-defendant Knight. The plaintiff put in evidence judgments against Knight rendered by a justice of the peace, and docketed in the Superior Court of Edgecombe county on the 14th day of February, 1883. Execution was issued thereon, and a deed was made to him by the sheriff of that county, after a levy and sale under the same. The plaintiffs claim that the deed of trust was void, for that it was made to hinder, delay and defraud the creditors of the maker Knight; that at the date of the trust Knight was indebted to Jones, Lee & Co., $4,180.00; to Savage, Son & Co., of which firm plaintiff was a member, $2,000.00; to W. J. Lawrence, the sum named in the deed of trust; to S. S. Mark & Co., $350.00, and H. L. Staton $250.00. The maker Knight, the trustee Bryant, and W. J. Lawrence, one of the *cestui que trust*, are residents of Edgecombe county, and Jones, Lee & Co., the other *cestui que trust*, live in Norfolk, Va., and are a mercantile firm in that city.

It was in evidence that the deed was drawn by W. M. Jones, a partner in the firm of Jones, Lee & Co. That the deed was signed by Knight at the residence of Jones, at Norfolk, Va., on the night of Friday, the .... day of February, 1883, only Jones, Knight and Lawrence being present. That Lawrence and Knight went by train to Norfolk on Friday evening, and left next morning. That they went directly from the train to Jones' private residence, and from there directly to the train the next morning. That Bryant had no knowledge of the trust, until after its probate and registration. That he was selected by the parties named at the drawing of the deed; that shortly after the execution of the deed in trust, W. J. Lawrence, one of the *cestui que trust*, said to plaintiff that he, Lawrence, had carried Knight to Norfolk and made him make the deed in trust to defendant Bryant, to defeat and cut out Savage, Son & Co., and they should

never get a cent of what was due them if he could help it. That Knight was present and did not deny it. That he added, "I was carried to Norfolk and to Jones' house, and remained there all night, and they trotted me back next morning just in time to reach the train, telling me that if I let the plaintiff see me he would have me arrested and put in jail."

Jones testified that "Knight came to my house with Lawrence and executed the trust openly, and, as I thought, a *bona fide* business transaction to secure the debt which he owed me. I then knew nothing of his indebtedness to Savage, Son & Co., nor any suggestion that Savage would arrest him. There was no concealment of Knight's presence in my house." His Honor charged the jury that if the deed of trust was made with the intent to hinder, delay and defraud the creditors of Knight, or any one of them, the deed was void, but to have that effect the plaintiff must show that the fraud was participated in by the *cestui que trust* Jones, who drew the deed. Plaintiff excepted. Verdict. Motion for a new trial for misdirection. Motion refused. Judgment for defendant. Appeal by plaintiff.

*Messrs. J. L. Bridgers, Jr.,* and *Haywood & Haywood,* for the plaintiff.

*Messrs. Connor & Woodard,* for the defendants.

ASHE, J. (after stating the facts). His Honor charged the jury, "that if the deed of trust was made with the intent to hinder, delay and defraud the creditors of Knight or any one of them the deed was void, but to have that effect the plaintiff must show that the fraud was participated in by the *cestui que trust* Jones who drew the deed."

We think the instruction was erroneous, and must have misled the jury, and the error consisted in qualifying the first part of the charge with the addendum "that to have that effect the plaintiff must show that the fraud was participated in by the *cestui que trust* Jones who drew the deed." We have been unable

to meet with any case where the validity of a deed is made to depend upon the participation of the draughtsman in the fraud alleged. According to the evidence, Jones was an innocent *cestui que trust*, and why select him as the person whose participation in the fraud, if there was one, instead of Lawrence, who was also a *cestui que trust*, and who according to the evidence, upon his own testimony, did not only participate in, but instigated the fraud.

If His Honor had instructed the jury, that the participation of Lawrence or any one of the persons who were secured by the deed of trust, was necessary to establish the fraudulent character of the deed, it is most probable that the verdict of the jury would have been different.

We are of the opinion, when the judge charged the jury "that if the deed of trust was made with the intent to hinder, delay or defraud the creditors of Knight or any one of them, the deed was void," he should have stopped there, and not have qualified his charge with the additional remarks, for such we understand to be the law in this State.

We are aware that there is a diversity of adjudications in different States upon this question. In New York for instance, it is held, that in deeds of assignment, the intent of the assignor to hinder, delay and defeat creditors is sufficient to vitiate an assignment, without any participation on the part of the assignee or those for whose benefit the assignment is made. But in some of the other States, it is held that no matter how fraudulent may be the intent of the assignor of a deed of assignment, the deed will be valid against unsecured creditors, unless the fraudulent purpose of the assignor is participated in by the assignees or the *cestui que trust*.

So far as we are able to come to anything like a definite conclusion from the conflicting adjudications on the subject, the decisions in this State rather concur with those of New York. We have substantially re-enacted the statute, 13 Elizabeth, in this State, act of 1815, The Code, sec. 1545, which reads. "For

avoiding and abolishing feigned, covinous and fraudulent gifts, grants, alienations, conveyances, bonds, suits, judgments and executions, as well of lands and tenements, as of goods and chattels, which may be contrived and devised of fraud, to the purpose and intent to delay, hinder and defraud creditors and others of their just and lawful actions and debts, every gift, grant, alienation, bargain and conveyance of lands, tenements and hereditaments, goods and chattels, by writing or otherwise, and every bond, suit, judgment and execution, at any time had or made, to or for any intent or purpose last before declared and expressed, shall be deemed and taken (only as against that person, his heirs, executors, administrators and assigns, whose actions, debts, accounts, damages, penalties, and forfeitures, by such covinous or fraudulent devices and practices aforesaid, are, shall, or might be in anywise disturbed, hindered, delayed or defrauded) to be utterly void, and of no effect."

The provisions of the statute are so plain that " he that runs may read." It is a remedial statute, and should be construed so as to abridge the mischief and enlarge the remedy. We cannot conceive, in the construction of the statute, how the validity of a deed of assignment alleged to be executed with a fraudulent intent, can in any way depend upon the honesty of purpose in the assignee. The assignor makes the assignment and no one else, and the *making intent* is his and no one else.

It is the intent and purpose existing in the mind of the insolvent debtor, at the time of making the assignment, to delay, hinder, defeat and defraud his creditors, that vitiates his assignment and renders it void. This is the construction given to the statute by some of the ablest jurists who have sat upon the bench. In *Hafner* v. *Irwin*, 1 Ired. Law, 490, Judge Gaston uses this language: " every conveyance of property by an insolvent or embarrassed man, to the exclusive satisfaction of the claims of some of his creditors, has necessarily a tendency to defeat or hinder his other creditors in the collection of their demands. But if the sole purpose of such a conveyance be the discharge of an honest

debt, it does not fall under the operation of the statute against fraudulent conveyances. It is not embraced within its words, *which apply only to such as are contrived of malice, fraud, collusion or covin, to the end, purpose and intent to delay, hinder and defraud creditors."* The decision in this case is cited with approval by Chief-Justice Ruffin in *Lee* v. *Flannagan*, 7 Ired., 471, where the learned Judge says: "The very power of an insolvent debtor to give preferences, implies that the effect may be that some of the creditors may lose their debts. Therefore, the distinction is, that where a deed in favor of one creditor is made *for the purpose* of defeating another creditor, it is fraudulent; but that is not so when the loss of the latter is merely a consequence of the preference given to a just debt." And, again, in *Cansler* v. *Cobb*, 77 N. C., 30, when an old man, much embarrassed, conveyed his land to his daughter in consideration of services rendered, and to be rendered in attending upon him in his old age, with intent to defraud his creditors, although the daughter had no knowledge of the fraudulent intent, it was held, Chief-Justice Pearson speaking for the Court, that the deed was fraudulent.

In this case the invalidity of the conveyance is not made to depend upon a participation of the grantee in the fraud, or a knowledge of the fraudulent purpose of the grantor in conveying his property. In New York, the construction given to a similar statute is, that "in determining upon the validity of an assignment made by a debtor, the intent of the assignor is the material consideration. Honesty of purpose in the assignee is not the test." *Wilson* v. *Forsythe*, 24 Barb., 105. And, again, in *Rathbun* v. *Planter*, 18 Barb., 272, it was decided that "an assignment made by a debtor, of his property, with the fraudulent intent to hinder, delay and defraud his creditors, is void, although the assignees are free from all imputation of participating in his fraudulent doings, and they are themselves *bona fide* creditors of the assignor, and are to take the entire avails of the assigned property to pay their preferred debts."

To the same effect is *The Mohawk Bank* v. *Atwater*, 2 Page, 54.

Lord Mansfield said in *Cadogen* v. *Kennett*, Cowper, 434 : " The question in every case is, whether the act done is a *bona fide* transaction, or whether it is a trick and contrivance to defeat creditors." The same principle is maintained in Michigan, 2 *Mich.* (Gibbs), 309, and in several other States.

All the cases here cited were deeds of voluntary assignments in trust to pay debts, except *Cansler* v. *Cobb*, and *Cadogen* v. *Kennett,* and in none of these cases is it held that the participation of the assignee in the fraudulent purpose of the assignor is a necessary element in the transaction to vitiate his deed. In such cases it is the *mala mens*, the fraudulent and covinous *intent* and *purpose* at the time of the concoction of the deed, that makes it void, no matter how innocent the assignee may be.

But there lies a distinction between such voluntary conveyances and absolute conveyances for a valuable consideration. In these latter cases when there is a valuable consideration paid by the grantee, he gets a good title, notwithstanding the intent of the maker to defraud, if he is not a party to such fraud, and buys without any knowledge of the corrupt intent. *Reiger* v. *Davis*, 67 N. C., 185 ; but when there is collusion between the grantor and grantee to hinder and defraud the creditors of the former, the conveyance will be void, even though the deed be founded upon a valuable consideration.

The distinction is recognized by Gould, Judge, in a note to his opinion in the case of *Wilson* v. *Forsyth, supra,* to the effect that in absolute conveyances, differing in that respect from voluntary deeds of assignment, the honesty or *bona fides* of the grantee does operate to make good a conveyance which the grantor intended to aid him to delay and defraud other creditors.

The distinction seems to us be a sound one. A voluntary deed is the result of the operation usually of but one mind, that of the grantor ; but a deed purporting to convey the estate absolutely, is a contract, and requires the concurrence of the minds of both the grantor and grantee.

This view of the subject is fully sustained by this court in the case of *Lassiter* v. *Davis*, 64 N. C., 498, where Reade, Judge, speaking for the court, says, "the distinction seems to be this: 1st. A voluntary gift or settlement is void, if it was the intent of the maker to hinder, delay or defraud, whether the party who takes the gift participated in the fraudulent intent or not. 2d. An absolute conveyance for a valuable consideration is good, notwithstanding the intent of the maker to defraud, unless the other party participated." The fraud must enter into and affect the contract.

There is a class of cases which would seem to form an exception to the interpretation here given to the statute by the cases above cited, as when there are several independent debts secured in an assignment, some of which are good and others fictitious and illegal. It has been held that the latter debts may be eliminated from the assignment and the deed will stand as to the good debts. Notably, are the cases of *Brannock* v. *Brannock*, 10 Ired., 428; *Harris* v. *DeGraffenreid*, 11 Ired., 89; *Morris* v. *Pearson*, 79 N. C. 253. It is difficult to reconcile the decisions in these cases with those we have cited above, but it is not necessary that we should undertake to do so, for they have no application to the present case. Here there were no fictitious or illegal debts attempted to be secured in the deed, and the question is squarely presented, whether a deed of assignment made by an insolvent debtor with the *intent* and for the *purpose* of delaying, hindering and defrauding a creditor is void, without any participation of the assignee or the beneficiaries under the deed, and we are of the opinion that it is void, not only against the party defrauded, but to all intents and purposes, so that if it shall be found by the jury in this case, that the deed made by Knight to Bryant was made with the fraudulent intent mentioned in the statute, the deed will be void, and all the trusts secured in it must necessarily fail. It may seem a hard case upon the innocent creditors secured in the deed, but it is equally hard on the party defrauded, who is not less innocent than the others, and

more deserving, because the statute was passed expressly for his protection.

Some deeds are void upon their face, and in such cases it is a question of law for the court, but when the validity of a deed depends, as in this case, upon the *intent* with which it was made, it is peculiarly a question within the province of the jury, and in such cases, when the rights of innocent persons are involved and not unfrequently to large amounts, a jury should require the most satisfactory proof of the fraudulent intent before they return a verdict finding the fraud.

The more critical scrutiny into the intentions and purpose of the debtor is required, because he has the right to prefer one creditor to another, and his right to do so, is only abridged when he exercises it, as said by Judge Gaston, " with contrived malice, fraud, collusion, or covin, to the end, purpose, and intent, to delay, hinder, and defraud creditors."

We are of the opinion, there is error, and it must be certified to the Superior Court of Edgecombe county that a *venire de novo* may be awarded.

Error.                                    Reversed.