A. C. WOODRUFF et al. v. CALVIN BOWLES and wife.

*Assignment—Consideration—Deed—Evidence—Fraud—Husband and Wife—Marriage.*

1. A deed of a husband to his wife will not be declared fraudulent upon its face by the Court merely because it recites as a consideration eleven hundred dollars and natural love and affection.

2. The rule is, that, when fraud appears so expressly and plainly upon the face of the instrument as to be incapable of explanation by evidence dehors (as when it is manifest, from reading a conveyance, that it was made and intended to secure the ease of a debtor embarrassed with debt at the time of its execution), there is a conclusive presumption of fraud, and the Court, without the intervention of a jury, will declare the deed fraudulent.

3. If, in the aspect of the evidence most favorable to the vendee, the deed is fraudulent in law, it is the duty of the Judge to so instruct the jury—not otherwise.

4. The whole consideration of a deed will not fail because a part of it was feigned. The cases of *Stone* v. *Marshall*, 7 Jones, 300, and *Johnson* v. *Murchison*, 1 Winst., 292, were overruled in *Morris* v. *Pearson*, 79 N. C., 253.

5. A husband can make a valid voluntary conveyance to his wife if he retain property sufficient and available to pay his debts.

6. If the husband is insolvent, his voluntary deed to his wife, or his deed for a full and fair consideration, but with notice on her part that it is intended to defraud creditors, is void.

7. If the husband, prior to the adoption of the Constitution of 1868, received the proceeds of the sale of his wife's land, with her consent, the money belonged to him ; but it was competent for him, being solvent, to agree with her to invest it in land and make her a deed for it, and the Courts will recognize the validity of such an agreement.

8. An assignment by a debtor of all his property, or what purports upon the face of the deed to be the whole of his property, ostensibly to provide for the payment of debts due to a portion or all of his creditors, but with intent to hinder, delay or defraud his creditors, or any of them, is fraudulent and void, though neither the trustee nor *cestui que trust* had any knowledge of the corrupt intent. ·

9. A mortgage deed, executed to secure the payment of money loaned, or of a valid pre-existing debt, but, also, with intent on the part of the mortgagor to hinder, delay or defraud his creditors, will be deemed valid, unless the beneficiary under the deed participated in the fraud.

10. When the grantee in an absolute deed pays a valuable consideration, he gets a good title, though the grantor may have executed the deed with intent to defraud his creditors, if the grantee had no knowledge of the fraudulent intent when it was executed.

(The reason for the difference in the rules applied to assignments, mortgages and absolute deeds discussed by AVERY, J.)

This was a CIVIL ACTION, tried before *Merrimon, J.,* at August Term, 1889, of the Superior Court of IREDELL County.

The plaintiffs claimed title to, and sought to recover of the defendants, the land mentioned and described in the complaint. On the 21st day of May, 1888, the Sheriff sold the land as the property of the defendant Calvin Bowles, under an execution upon a judgment of the Superior Court of Iredell County, in favor of A. P. Sharpe, administrator, and others, against Calvin Bowles, defendant, and others. The plaintiffs became the purchasers at the sale, and the Sheriff executed to them a deed. The plaintiffs, in order to show that the *feme* defendant claimed under Calvin Bowles,

showed in evidence a deed from Calvin Bowles to her, of date the 6th day of October, 1883.

The plaintiffs then introduced as a witness P. W. Eagle, who testified that, some time since 1880, he had heard Calvin Bowles talking—since the judgment against him; that he didn't intend to pay any more security money; that this was at Calvin's house, and in Mrs. Bowles' presence; that he heard her complain that they were trying to get more out of them than was due them, and that they didn't allow them to have any more; that he heard complaints the day they were at Bowles' laying off his homestead; that both defendants said it was not necessary to lay off the homestead; that they intended to fight it out; that he heard Mr. Bowles say he had made the land over to his wife, and that the land once belonged to her and she wanted him to convey it back; that she said she had it made over to her to cover these debts; that he had heard that the money Calvin Bowles used to pay for the land was his wife's money.

One Harmon, a witness for the plaintiffs, testified in corroboration of Eagle.

The plaintiffs here closed, and defendants introduced as a witness one Blackwell, who testified that defendant Calvin bought the land from one Turner, and he (Blackwell) went his security for the purchase money; that Turner owed him, and he allowed this debt to Bowles to pay Turner with, and Bowles then gave him (Blackwell) his note, and turned over to him the deed he had received from Turner as collateral security; that he (Blackwell) kept the deed until 1869, when Bowles paid him off, and he surrendered the deed; that, two days afterwards, the deed was registered; that the first payment made to him was a horse Mrs. Bowles' father had given her; horse rated at $150.

The defendant Mrs. Bowles testified that her husband failed to pay for the land, and told her if she would take her effects and pay for it, she might have it; that her husband

# IN THE SUPREME COURT.

said he would have to sell it if she did not take it; that Blackwell went her husband's security for the land debt, and Turner owed Blackwell and gave him Bowles' note, and Bowles gave Blackwell his note; that her husband told her the land would be hers if she paid her effects on the land debt—this in fall of 1857; that the deed was made by Turner to her husband in 1855, and the exchange of notes was in 1857; that her husband kept the deed two years, and then delivered it to Blackwell, his surety for the purchase money, who held it until 1869, when, upon the payment of the balance of the purchase money, the deed was handed back to Calvin Bowles; that the consideration paid for the land was $750; that, at the time of the trade, her father had given her a horse, and that she allowed her husband to pay this horse on the land trade at the price of $150; that her husband also received, as administrator of her father's estate, $90 of her money from the sale of her father's personal property, and she allowed this to be applied towards the payment of the land debt; that she was, also, entitled to $60 from the other heirs of her father to make equality of partition, and this was paid on the land; that she received another horse as the price of her land, at $140, and her husband sold this horse for $180, and paid it on the land—these payments all made before 1859; that one A. A. Sharp held, as a trustee for her mother during her natural life, the sum of $2,000, and, in 1858, her husband borrowed of this sum from the trustee the sum of $259, which was also paid on the land; that, at the time her husband borrowed this money, the sum of $2,000 was apportioned among her mother's children by the trustee, and this $259 was the portion she (Mrs. Bowles) was to receive at her mother's death; her husband was to pay interest to the trustee until her mother's death; that, in 1870, she received $42 from the sale of her deceased brother's interest in her father's land—this money her husband received and used; that, when her husband conveyed the

land to her in 1883, she and her husband considered all their various claims as a debt against him in her favor, and they constituted the consideration for the deed to her.

Mrs. Bowles demurred and contradicted the testimony of Eagle and Harmon, and said that she told them the deed from her husband to her was made to cover the debt her husband owed her under the agreement made with her, that, if she would allow him to use her effects to pay for the land, he would make her a deed for it.

Calvin Bowles testified in corroboration of his wife's evidence, and said that it was agreed between them that, if she would let what she got from her father go to pay for the land, it should be hers, and that he executed the deed to her in fulfillment of that agreement. Calvin Bowles had no other land, and was not worth his lawful exemptions in personal property. It appeared that the $259 note was a part of the judgment under which the land was sold, and that Calvin Bowles owed other debts at that time.

The only issue passed upon by the jury was as follows:

"Was the deed of Calvin Bowles of October 6, 1883, to his wife Asenath Bowles made to hinder and defraud the creditors of Calvin Bowles?"

It was conceded that, if this issue should be answered in the affirmative, it would not be necessary for the jury to pass upon the others.

The plaintiffs contended—

1. That the deed was fraudulent upon its face.

2. That, upon the defendants' own showing, the transaction was fraudulent.

3. That the property received by the defendant Calvin Bowles, before 1868, from the estate of his wife's father, became his, and could form no part of the consideration in the deed to his wife, nor could it be an indebtedness to his wife; that if any part of the consideration of the deed was feigned, it was void.

The Court declined to give the first and second, and gave only so much of the third as will appear hereafter.

His Honor told the jury that the deed did not appear upon its face to have been made with the intent on the the part of Calvin Bowles to hinder, delay, or defraud his creditors, and that the Court would not be warranted in saying to them that the transaction was fraudulent (as a matter of law), and charged the jury as follows:

1. That it was for the plaintiffs to show that the defendant Calvin Bowles made the deed to his wife with intent to hinder and defraud his creditors.

2. That if he, being insolvent, made the deed to her without any consideration, other than that of natural love and affection, the deed was fraudulent and void as to creditors.

3. That if he, being insolvent, made the deed for a valuable consideration, and a full and fair price, but with the intent to hinder or defraud his creditors, and his wife knew of such intent at the time of the delivery of the deed to her, the deed was fraudulent and void as to the creditors of Calvin Bowles.

4. That if Calvin Bowles, being unable to pay his debts, conveyed the land to his wife for less than its reasonable value, the presumption was that the conveyance was fraudulent as to his creditors, and that, unless the defendant had rebutted the presumption, it was the duty of the jury to find the first issue in the affirmative; that the relationship between the defendants was evidence for the jury to consider of a fraudulent intent on the part of Calvin Bowles, known and participated in by his wife, and, in this view of the case, it was for the defendants to satisfy the jury that the deed was not fraudulent.

5. That at the time Calvin Bowles received the horse and moneys of his wife, proceeds of her real estate, the law was such that he became the absolute owner of them, free

from any claims of the wife whatever.   But that it was competent for them to agree that such property should be the separate property of the wife, and if they had such an understanding and agreement in regard to it, and it was agreed further between them, that the husband should use and employ it as his wife's property in paying for the land, and make her a deed to the land, and he did so use it, and in good faith conveyed her the land in pursuance of that agreement, and without any intent to hinder, delay or defraud his creditors, the deed would not be void as to his creditors.

That the $259 which Calvin B wles borrowed from the trustee of his wife's mother, was not a debt due from him to his wife, and could form no part of the consideration for the conveyance to her, by her husband, of the land in dispute, but this fact in itself would not justify the Court in declaring the deed to be fraudulent and void.

It was for the jury to say whether the evidence in the case satisfied them that the deed was made by Calvin Bowles with intent to hinder and defraud his creditors.

If, after deducting the $259 from the amount of the consideration expressed in the deed, it appeared to them, from the evidence, that the deed was made to Mrs. Bowles for less than the land was reasonably worth, the presumption was that it was fraudulent, and unless the defendants had satisfied them that it was a fair and honest transaction between the defendants, they should find the issue in the affirmative.

6. That the defendant Calvin Bowles had the right to give his wife any property he owned, whether personal or real, and no matter whence he derived his title to the same. That if he received property by his wife, it was competent for him to give it back to her to be her own, and then to agree with her in regard to the manner in which, and the purposes for which, it should be used.   But he could not do this to the

prejudice of his creditors, or with the intent to defraud them.

The question here was whether the husband had agreed with his wife that the property which she received from her father and from his estate, and from her brother's estate, should be and remain the property of the wife, and that she should have the land in question if she would allow him to use her property in paying for it.

The plaintiffs excepted to the refusal of his Honor to charge as they requested, and to the charge as given, as follows:

1. Because the Court erred in not holding the transaction fraudulent in law upon the evidence.

2. In not declaring the deed fraudulent on its face.

3. In not instructing the jury that, if part of the consideration upon which the deed from Calvin Bowles to his wife was made was feigned, the deed was void as to the creditors, if he was insolvent at the time.

4. That the Court erred in instructing the jury that, if the wife paid a valuable consideration, no matter how small, and she did not know of the husband's intention to defraud, the deed would be good, even if the husband did intend to defraud his creditors.

5. That the Court erred in charging the jury that, if the husband received the horse given his wife by her father, even at the hour, or before he received it, he agreed with her that the value of it should be a debt, it would become a debt, and might form a part of the consideration to support the deed.

6. That the Court erred in applying the same rule to all the other personal property, and also the real estate, it being admitted, at the time the same was received, the defendant Calvin Bowles was indebted and insolvent and owned no other property, and it being in evidence that the debt of $259

is a part of the debt upon which the judgment was entered, under which the land was sold.

7. That the Court erred in charging the jury that the defendant could give back to his wife a part of her property and then take it back, and the balance become an indebtedness to her, it being admitted that he was then insolvent and largely indebted and holding no property.

8. That the Court erred in instructing the jury that, if the $259 debt was a part of the consideration in the deed from Bowles to his wife, it would not render the deed void as to creditors, but might be considered by them as evidence of fraud, and only raise a presumption of fraud that may be rebutted by the defendants, and, in not telling them the transaction was fraudulent as to creditors, if the defendant Bowles was insolvent.

These exceptions to the instructions given by his Honor to the jury were not filed until after the jury returned their verdict.

In so far as they undertake to set forth the charge to the jury, it will be seen, by reference to the charge itself, that they are inaccurate, and do not, for the most, set forth, substantially, the charge.

The Court called the attention of the jury to the testimony of the several witnesses who were examined, and recited it fully. There was no evidence that Calvin Bowles owed any debt, except the purchase money for the land, at the time he and his wife, as they testified, made the agreement by which her property was to be used to pay for the land, and the land was to be hers.

The jury found the first issue in the negative. Plaintiffs moved for a new trial, which motion was denied. There was judgment for defendants. Plaintiffs appealed.

*Mr. A. E. Holton*, for the plaintiffs.

*Messrs. D. M. Furches, W. M. Robbins* and *M. L. McCorkle*, for the defendants.

AVERY, J.—after stating the facts: In the natural order of treating the subject, the second exception should be the first considered. The plaintiffs contend that the Court erred in failing to declare that the deed executed by Calvin Bowles, Oct. 6, 1883, to his wife was fraudulent upon its face, and void in law, because the consideration cited therein was "eleven hundred and fifty dollars to him paid by said Asenath Bowles (the receipt of which is hereby acknowledged), and in consideration of natural love and affection."

Following, and somewhat enlarging, the classification of cases of this kind, in *Hardy* v. *Simpson*, 13 Ired., 132, this Court, in *Brown* v. *Mitchell*, 102 N. C., 368, states the rule for distinguishing the cases where the duty devolved upon the Court of declaring the fraud without the aid of a jury, those cases where the admitted facts and circumstances raise a presumption of fraud, and the issues are submitted for the jury to determine whether it is rebutted by the evidence, and, third, where a number of circumstances tending to prove the fraud are in evidence, and the jury are left to say by their verdict whether they are sufficient to show, to their satisfaction, that the deed is fraudulent. The first of these propositions is as follows: "When the fraud appears so expressly and plainly upon the face of the deed as to be incapable of explanation by evidence dehors (as where it is manifest, from reading a conveyance, that it was made and intended to secure the case of a debtor embarrassed with debt at the time of its execution), there is a conclusive presumption of fraud, and the Court, without the intervention of a jury, declares the deed fraudulent." According to the statement appended by the Judge to the plaintiffs' assignment of errors, there was not even extrinsic evidence that Calvin Bowles owed any debt except the purchase money for the land when he made the agreement with his wife. The plaintiffs' counsel insist that where the

consideration is in part good and in part bad, as where it is notes, some of which are valid and some feigned, the deed is void *in toto*, and this deed, in which the pecuniary consideration is coupled in conjunction with that of natural affection, falls under that condemnation. To sustain this view they cite *Stone* v. *Marshall*, 7 Jones, 300, and *Johnson* v. *Murchison*, Winston's Law, 292. In *Morris* v. *Pearson*, 79 N. C., 253, this Court expressly overruled *Stone* v *Marshall* (and, by implication, of course, the latter case, in which the former is cited as authority as to the same principle), and approved the cases of *Brannock* v. *Brannock*, 10 Ired. 428, and *McNeill* v. *Riddle*, 66 N. C., 290, in which just the opposite rule is laid down.

We cannot conclude from the face of the deed that it was made for the ease and comfort of one embarrassed with debt. There is no internal evidence that the grantor was indebted to any person. Nor is the legal inference to be drawn that the deed is vitiated, and is to be treated as voluntary and fraudulent, because to the pecuniary consideration is added that of natural affection. Indeed, if no valuable consideration had been mentioned, the grantor could make a valid voluntary conveyance to his wife, if he retained property sufficient and available to discharge his liabilities. *Taylor* v. *Eatman*, 92 N. C., 601; *Worthy* v. *Brady*, 91 N. C., 265. For the first assignment of error, we find no more support in the evidence and the law applicable to it. The issue of fraud was one for the jury, and the Court could not withdraw it from their consideration without invading their province and disregarding the right of defendants under the Constitution. *Beasly* v. *Bray*, 98 N. C., 266.

If, in the aspect of the evidence most favorable to the defendants, or upon their own showing, the deed was fraudulent in law, it was the duty of the Judge to so instruct the jury, and not otherwise. Relying upon the authority of *Black* v. *Justice*, 86 N. C., 511, and *Temple* v. *Williams*, 4 Ired.

Eq., 39, the plaintiffs insist that all the property and money delivered to pay the price of the land belonged, in contemplation of law, to the husband, and certainly that a portion of it was his *jure mariti*, and the whole consideration must, in any view, fail, because a part of it was feigned. We have already discussed the latter proposition, which is predicated upon the principle laid down in *Stone* v. *Marshall, supra.* In the two cases mentioned, this Court held that, where the wife's land was converted into money by a judicial sale for partition before the adoption of the Constitution of 1868, and she suffered the husband to receive the fund due her without any stipulation as to how it should be held, it became personal property and belonged to the husband. In *Giles* v. *Hunter*, 103 N. C., 201, the Court say: "If the money arising from the sale of the land (made before the year 1868) was allowed, by her consent, to be paid to him (the husband) it became his property. If it was invested, with her consent, in other lands, and with no request on her part that the land purchased should be conveyed to her, or for her benefit, and the husband took title to himself, the land vested absolutely in him, discharged of any equity in her." *Hackett* v. *Shuford*, 86 N. C., 144. But, on the other hand, where the husband and wife joined in the conveyance of a tract of land belonging to her in the year 1842, and it was agreed, verbally, between them that he should receive the purchase money and invest it for her in other lands, and the husband bought other lands with the proceeds of sale, but took title in his own name, this Court decided that he held as a trustee for the wife. *Dula* v. *Young*, 70 N. C., 450. And, in that case, after his death, and the death of his wife, her heirs at law held the land, free from the incumbrance of the husband's debts, and his administrators were not allowed to subject it as assets.

According to the testimony of the *feme* plaintiff, under an agreement with herself to account to her and invest for her

benefit, she permitted her husband to receive and sell a horse delivered in lieu of the purchase money for her share of a tract of land sold after the partition was made between her father's heirs. The husband, in pursuance of an understanding with her, sold the horse, as her agent, for one hundred and eighty dollars, and paid that amount on the purchase money due for the land in controversy. With the same understanding, he received and applied in the same way sixty dollars due her as her moiety of partition of the said land, and forty-two dollars received as her share of a fund arising from a sale of the interest of a deceased brother in her father's land. The horse, given to her by her father in the year 1857, became the property of the husband, as did the money—ninety dollars—received by the husband as the distributive share of the fund arising from the sale of personal property belonging to her father's estate. The residue of the purchase money, as she testifies, was two hundred and fifty-nine dollars—her portion of a fund of two thousand dollars, which was to be divided, at her mother's death, among her children, and was borrowed by her husband from that fund before her mother's death.

Instead of the instruction asked, having previously given other instructions as to the insolvency of the husband, to which we will presently advert, his Honor told the jury that, under the law then in force, all of this property used in the purchase of the land belonged to the husband absolutely, but "it was competent for him to agree that it should be the property of the wife, and if they had such understanding and agreement in regard to it, and it was agreed further between them that the husband should use and employ it, as his wife's property in paying for the land, and make her a deed to the land, and he did so use it, and, in good faith, conveyed her the land in pursuance of the agreement, and, without any intent to hinder, delay or defraud his creditors,

104—14

the deed would not be void as to his creditors." This instruction being preceded by the statement that the voluntary deed of the husband, if he was insolvent, was void as to creditors, is sustained by the principle announced in *Kee* v. *Vasser,* 2 Ired. Eq., 553, and in *Smith* v. *Smith,* Winston's Eq., 30. Both of these cases are cited and approved in *George* v. *High,* 85 N. C., 102, as correctly laying down the law as to gifts from a husband to his wife. In this case the Court distinctly recognizes the right of the husband, being solvent, to make valid gifts to his wife, and such gifts of property or money to her were sustained by the Courts of Equity and enforced, after the death of the husband, against his personal representative.

These cases are cited by Justice RUFFIN in *George* v. *High,* "to show the *policy* of the Courts of modern times in regard to this fiction as to the unity of person, and their *readiness to dispense with it* on account of its tendency oftentimes to defeat real justice and disappoint the most generous intentions of husbands."

After the explicit instruction that the voluntary deed of the husband to the wife was void, if the husband was insolvent, the Judge told the jury, further, that if, being solvent, he conveyed to her for a full and fair consideration, but with intent to defraud his creditors, and *his wife knew of such intent* at the time of the delivery of the deed to her, the deed was fraudulent and void as to his creditors. The counsel on both sides cite *Savage* v. *Knight,* 92 N. C., 493, in support of their respective views, and thus we are again confronted with the question, "What is the difference in the rules of evidence applicable to absolute deeds, assignments for the benefit of creditors and mortgage deeds, when attacked for fraud?" As an apparent conflict of authorities may be satisfactorily explained by drawing the lines between them, we deem it pertinent to do so.

1. An assignment by a debtor of all his property, or what purports upon the face of the deed to be the whole of his property, ostensibly to provide for the payment of debts due to a portion or all of his creditors, but with intent to hinder, delay or defraud his creditors, or any of them, is fraudulent and void, though neither the trustee nor *cestue qui trust* had any knowledge of the corrupt intent.

2. A mortgage deed, executed to secure the payment of money loaned, or of a valid pre-existing debt, but also with the intent, on the part of the mortgagor, to hinder, delay or defraud his creditors, will, nevertheless, be deemed valid, and enforced by the Courts as against the claims of creditors other than the mortgagee or *cestue qui trust*, unless the beneficiary under the deed had knowledge of and participated in the fraud.

" A voluntary assignment means an assignment of all the debtor's property in trust to pay debts, as contradistinguished from a mere sale thereof, or pledge or hypothecation of the property to a particular creditor, as a mere security in the nature of a mortgage." *Deas* v. *Barchard*, 10 Paige, ch. R., 41. See, also, *Lavender* v. *Thomas*, 18 Ga., 668; *Battle* v. *Mayo*, 102 N. C., 440; *Dowd* v. *Means*, 128 U. S., 273; *Rathburn* v. *Putner*, 18 Barb. (N. Y.), 272; *Wilson* v. *Forsythe*, 24 Barb. (N. Y.), 120; *Barker* v. *Hull*, 13 N. H., 293; *Hewitt* v. *Hollins*; 11 Penn. St. (1 Jones), 27. A mortgage deed differs from assignment, in that it contains a clause of defeasance under which the property conveyed may revert to the mortgagor, while under an assignment the property transferred to the assignee is to be sold at all events. *Morden* v. *Babcock*, 2 Metcalf, 204. Moreover, a mortgage with power of sale in the mortgagee, or a self-executing mortgage, with the same power vested in a trustee, provides that the sale is to be made, if either a certain sum of money, or one which the instrument indicates the means of making certain, shall not be paid within a given time. So that it appears, from the face of the deed, that the amount of the

incumbrance is definitely determined, or is ascertainable, by resorting to a source of information indicated by its terms. *Hinsham* v. *Sumner*, 25 Pickering R., 446. If the same rule were applied to mortgage deeds as to voluntary assignments, it would result inevitably in injury to credit, and thus seriously interfere with commercial transactions, because it would prove perilous to loan money on real estate as security if the borrower were involved in debt, though the creditor could look only to recorded deeds and liens appearing of record for information as to the pecuniary condition of the former. The recent amendment to our registration laws, shows the legislative view that it would facilitate the negotiation of loans on such security, to afford the means of tracing title with chances of greater accuracy after the passage of the act.

3. When the grantee in an absolute deed pays a valuable consideration, he gets a good title, though the grantor may have executed the deed with intent to defraud his creditors, if the grantee had no knowledge of the fraudulent intent when it was executed.

As a reason for this difference between absolute conveyances and assignments, this Court, in *Savage* v. *Knight, supra,* said: " A voluntary deed is the result of the operation usually of but one mind—that of the grantor—but a deed, purporting to convey the estate absolutely, is a contract, and requires the concurrence of the minds of both the grantor and grantee." In the case at bar, we are dealing with a conveyance absolute upon its face, and, therefore, the Court properly instructed the jury that it was necessary to show participation on the part of the grantee in the fraudulent intent of the grantor (if they found the latter was not acting in good faith) before the jury could find, or the Court could declare, the deed fraudulent.

In *Morris* v. *Pearson, supra,* Justice RODMAN says, in substance, that the apparent conflict of authorities upon the subject of declaring deeds void because a part of the

consideration is shown to be erroneous, has grown out of the habit of confounding the consideration with the intent. Upon this idea we may readily reconcile with the views we have announced the authorities relied on by the plaintiff to establish his contention. The principles we have laid down will, at a glance, mark the line between this case and any others in which the conveyance attacked was a voluntary assignment.

It is certain that the plaintiff had no just cause to complain of the instruction, numbered four, given by the Court, for, assuming Bowles to be solvent, the Court did not tell the jury that the relationship of the parties to the deed, and the inadequacy of the price, if that paid was not a fair one, were badges of fraud or circumstances to be considered in connection with the testimony tending to show the deed was fraudulent, but instructed them that both the failure to pay an adequate price and the fact that the parties were husband and wife, raised a presumption of fraud and cast upon the defendants the burden of rebutting it by the evidence. Bump. on Fraudulent Con., 86; *Brown* v. *Mitchell, supra;* Bigelow on Fraud, 136.

While we have not mentioned, specifically, each assignment of error filed by the plaintiffs—and, indeed, some of them are inconsistent with the statement of the case made by the Court—we have considered and discussed every point properly raised by the exceptions to the charge of the Court, and we find no error that should entitle the plaintiffs to a new trial.

It seems difficult to dispel from the minds of parties and counsel the idea that, in actions like this at bar, the appellate Court can, in some way, vacate the finding of a jury that they think is plainly against the weight of testimony. The jury have decided the issue in this case in the light of a full and fair exposition of the law by the learned Judge who presided, and their verdict must stand.

Affirmed.