LYDIA FERRELL et al. v. ALFRED THOMPSON.

*Pleadings — Verdict — Judgment — Record — Notice of Appeal — Case on Appeal — Weight of the Evidence — Husband and Wife — Jure Mariti — Waiver.*

1. The consideration of this Court upon points arising out of the plead-ings, verdict and judgment, will be confined to such exceptions as are shown by the record to have been taken.

2. Motions to set aside a verdict because against the weight of the testi-mony, or for newly discovered testimony, address themselves solely to the discretion of the Court below.

3. In an action against a commissioner by a *feme* plaintiff and her hus-band, for the proceeds of the sale of certain slaves sold by him, it appeared that the sale was made in 1863; that the co-plaintiffs were married in 1855, and that the action was brought in 1888: *Held*, that the proceeds of sale belonged to the husband, and judgment in favor of the wife instead of him was error.

4. The property vested in the husband *jure mariti*, and no act of the wife was necessary for this purpose or could have prevented it.

5. Notice of appeal, though in the record, is no more a part of it than the case upon appeal.

6. Where it appeared that the husband refused to receive the proceeds of sale, and said, at the time, he wanted his wife to have it, but this was not set up in the complaint, and the answer denied any interest in the wife, averring ownership in the husband, which averment was uncontradicted: *Held*, that the contention that the husband had thereby waived his right to the proceeds could not be allowed.

This was a CIVIL ACTION to recover a share in the proceeds of sale of slaves belonging to the distributees of John Mathews, deceased, the father of the *feme* plaintiff, made by the defendant as commissioner appointed by the Court to sell the same for partition, tried at September Term, 1890, of NASH Superior Court, before *MacRae, J.*

It is alleged in the complaint, and admitted in the answer, that, at the November Term, 1862, of the late Court of Pleas and Quarter Sessions of Nash County, an order was duly made, appointing the defendant commissioner to sell the slaves named in the complaint for division among the children of John Mathews, deceased, the owner of said slaves; that, in pursuance of said order, the said commissioner sold said slaves on the 24th of January, 1863, for the prices respectively named in the complaint, and made his report of the sale at the February Term, 1863, of said Court, at which term said sale was duly confirmed, and that there were nine children of John Mathews, of whom the *feme* plaintiff Lydia Ferrell was one.

It is further alleged in the complaint, but denied in the answer, that, applying the scale of depreciation of Confederate money, the *feme* plaintiff Lydia Ferrell is ·entitled to $219.85 in good money, with interest from January 24, 1863, and that the defendant has refused and failed to pay the same, or any part of the money due as aforesaid, and the plaintiffs pray judgment therefor.

The defendant denies that the *feme* plaintiff is entitled to the money named, and says "that the share of the *feme*

plaintiff in the slaves which came to her by her father's death, and mentioned in the complaint, vested, by virtue of her marriage, in her husband, P. L. Ferrell, and, upon settlement, defendant paid to him, the said Ferrell, the full amount due from sale of said slaves."

The defendant further relies upon the ten-year statute of limitations and of presumptions.

The following issues were agreed upon and submitted:

"1. Is the plaintiffs' claim barred by the statute of limitations?

"2. Have the matters in controversy been formerly adjudicated?

"3. Is the defendant indebted to the plaintiffs, or either of them, as alleged in the complaint? If so, in what sum?"

The male and *feme* plaintiffs intermarried in the year 1855. This action was commenced on the 14th day of July, 1888.

There was evidence, which is sent up with the record, tending to show that, in 1876, Lydia Ferrell brought an action against the defendant upon the same cause of action as the present, and it is insisted by the defendant that the matter in controversy in this action was adjudicated adversely to the plaintiff, but no exceptions are presented by the record either to evidence or to any ruling or charge of his Honor in relation thereto, and no question in regard thereto is presented for our review.

It was in evidence, and not controverted, that the slaves were sold by the defendant, as commissioner, in 1863, and that he paid, respectively, the distributive shares of the proceeds of the sale of the slaves to all the distributees except the plaintiffs.

W. C. Ferrell, a witness for the plaintiffs, a brother of the male plaintiff, testified, in substance, that defendant told him, in 1866, that he had proposed to pay the money to P. L. Ferrell (the male plaintiff) at the conclusion of the sale;

that Ferrell had bought some negroes at the sale, and "defendant proposed to discount and allow him, in settlement, the amount due plaintiff Lydia, but that he refused to do it and paid the money for the slaves he had bought. Defendant said he had not settled for Lydia's share."

There was other evidence of this witness in regard to a trust deed made by the male plaintiff to the defendant to secure an indebtedness to him, tending to show that there was a settlement between the male plaintiff and the defendant about August, 1864, in which there was a balance due the male defendant of about $160.

On cross-examination, the witness said he did not know what transactions had been between the male plaintiff and defendant since 1864. Witness had heard of a suit brought by the plaintiff Lydia against the defendant; he supposed, about this same matter.

Upon re-direct examination, he said that, in 1878, the defendant told him that he was not going to pay the money unless the law compelled him; that he held a note of P. L. Ferrell, which he claimed as a set-off.

The deposition of the male plaintiff was put in evidence for the plaintiffs, and he deposed that he moved to Texas in 1870; that the *feme* plaintiff "was his wife up to 1868;" that she left him "twice before that time—first in 1863; don't remember the second time;" that in 1858 or 1859 he made a "trust deed" to the defendant; that his or his wife's interest was not sold under that deed; that in 1864 he and the defendant had a settlement, when the defendant fell in debt to him $180, and paid him in money; that the defendant never paid him any part of the proceeds of sale of the slaves, and that he "never assigned or released to any one any part of said proceeds of sale;" that after the war he and his wife were living together, and he proposed "to collect this money," and she told him "to let it alone—that it was doing well

IN THE SUPREME COURT.

enough; and he did not undertake to collect it, and never said anything about it afterwards."

Upon cross-examination, he said his wife left him, and he went to Texas in 1870 and married, and has had six children by that marriage.

The defendant testified, in substance, that the male plaintiff was owing him (defendant) more than he owed the male plaintiff, and he proposed to settle, but the male plaintiff said "he wanted his wife to have her share, and would not settle;" that the male plaintiff "made demand on defendant more than one time; he would tell defendant he wanted his wife to have that (the share of the proceeds of sale of slaves), and defendant would tell him if he would pay defendant his claim, defendant would settle with his wife."

His Honor charged the jury:

"The statute of limitations does not bar Mrs. Ferrell, because she is, and has been all the time, a married woman.

Does it bar Mr. P. L. Ferrell, the other plaintiff?

The defendant admits the sale of the slaves, and the reception of the purchase-money by him as commissioner. So he was holding the money as a trustee; and, ordinarily speaking, the statute of limitations does not run against him until a demand and refusal.

But if, in this case, you find the fact to be that, before P. L. Ferrell left North Carolina in 1870, the defendant declined to pay over the money to his wife, or to him, claiming that P. L. Ferrell was indebted to him in a larger amount, the statute of limitations began to run against P. L. Ferrell from the time of such refusal by defendant to pay, and your response to this issue should be, Yes, as to P. L. Ferrell.

But if there was no denial of the debt, or refusal to pay, the statute of limitations did not begin to run until a demand, and there is no question made in the pleadings as

to the necessity of a demand, and your response should be, No.

Have the matters in controversy been formerly adjudicated?

It is contended that there was an action in 1876 between Lydia Ferrell and defendant upon the same cause of action.

The papers have been lost, and we have to rely upon secondary evidence as to the contents of the complaint.

If the complaint was for the same cause of action, and a demurrer was interposed by defendant, and a judgment was rendered against the plaintiff on the merits, she is bound by it. She ought to have appealed, or to have had leave to amend her complaint. And, if this is the case, your response should be, as to Lydia Ferrell, Yes.

It is not contended that P. L. Ferrell was a party to that suit, so, as to him, your response should be, No.

But if that action was against Alfred Thompson, as guardian of Mrs. Ferrell, it was another matter, and your response should be, No."

The defendant asked for the following instructions:

" 1. If the plaintiff P. L. Ferrell is indebted to defendant Alfred Thompson in the amount of the judgment against Samuel Marshburne and P. L. Ferrell, then the plaintiffs are not entitled to recover in this action.

" 2. That the judgment rendered at Fall Term, 1876, in the case of *Lydia Ferrell* v. *Alfred Thompson*, is a bar to recovery as to the plaintiff Lydia in this action.

" 3. *That the allegation repeatedly made by defendant Thompson, that he would not pay proceeds of sale, was denial of the fact that he held the fund in fiduciary capacity, and the statute of limitations was set in motion, which was prior to 1870.*"

The jury responded "No" to the first and second issues, and judgment was rendered in favor of the plaintiff Lydia Ferrell for $188.38, with interest on $73.24 from November 19th, 1885, and costs of the action, &c.

Defendant moved for a new trial—(1) because the verdict was against the weight of testimony; (2) for newly discovered evidence.

Motion denied. Judgment. Defendant excepted to the judgment, for that it should have been rendered in favor of P. L. Ferrell and not in favor of his wife, as the slaves sold vested absolutely in the husband, P. L. Ferrell, and that his wife had no legal interest in said slaves or the proceeds of sale. Defendant appealed.

*Messrs. Bunn & Battle* (by brief), for plaintiffs.
*Messrs. C. M. Cooke* and *F. A. Woodard*, for defendant.

DAVIS, J.—after stating the facts: It has been often held, and is well settled, that the appellate jurisdiction of this Court in an action properly constituted in a Court of competent jurisdiction, so far as the *pleadings, verdict* and *judgment* are concerned, will be confined to such exceptions as are shown in the record to have been taken in the Court below. *Phipps* v. *Pierce*, 94 N. C., 514, and cases there cited.

The evidence and his Honor's charge are sent up, but the record presents no exceptions to either, and we need not consider whether objections, if properly taken below, might be successfully maintained here.

Whether his Honor was correct in charging the jury that the statute of limitations did not bar Mrs. Ferrell because she is, and has all the time been, a married woman, or should have instructed them that the statute of limitations had no application, but that it was governed by the statute of presumptions, in which there is no saving of the rights of persons under disabilities, as held in *Headen* v. *Womack*, 88 N. C., 468, and *Houck* v. *Adams*, 98 N. C., 519, and cases there cited, we need not consider; nor are we called upon to review his Honor's charge as to whether the statute of limitations began to run against the male plaintiff, though the uncontroverted

evidence, both for the plaintiff and defendant, upon that question, is that the defendant refused to pay prior to 1870; nor does it appear whether the instructions asked by the defendant were given or refused, nor is any exception presented in relation thereto.

The only exceptions that appear to have been taken are—

"1. Because the verdict was against the weight of testimony.

"2. For newly discovered evidence.

"3. To the judgment in favor of the *feme* plaintiff instead of P. L. Ferrell, the husband."

It has been too often held to need repetition, that the first and second address themselves solely to the discretion of the Judge below and are not reviewable by us, and the only question presented by the record for our consideration is, Was the judgment rendered erroneous?

The counsel for the plaintiffs says this objection cannot avail the defendant, because, "after the judgment had been rendered, and, indeed, after the expiration of the term, a notice was served on the plaintiffs of an appeal by the defendant on account of the erroneous rulings by the Judge on motion for a new trial." He insists that this notice, which appears in the record, "shows that, if any exception was taken during the trial because the judgment was rendered in favor of the *feme* plaintiff, such exception was abandoned, and that point is not involved in this appeal," and the "record," and not the "case," controls. The answer to this objection is, that the "notice of appeal," though in the record, is no more a part of it than the "case" on appeal, which, having been settled by his Honor on disagreement of counsel, is conclusive unless in conflict with the record proper; in fact, "the concise statement of the case required," and not the notice, must show the exceptions and grounds of appeal.

Upon the verdict, was the judgment properly rendered in favor of the *feme* plaintiff? We need not consider whether she was a necessary party to the action, or whether, as the property *jure mariti* vested in the husband, he should have sued alone. *Spiers* v. *Alexander*, 1 Hawks, 67. But we are of opinion that the judgment in favor of the *feme* plaintiff was erroneous. Whatever may be the effect of his abandonment of her, or, as he says, of her abandonment of him, the interest of the *feme* plaintiff in the slaves had vested absolutely in the husband before the separation, and was subject to his debts and liabilities. *Pettijohn* v. *Beasley*, 4 Dev., 512, and cases cited. No act of the wife was necessary to vest the slaves, or her distributive share in them, in her husband, nor could she, in any manner, have prevented it. Whether, if the husband had died before the payment of the distributive share, it would have gone to his personal representatives or survived to the wife, we need not consider, for the husband is still living, and, though he has lived in another State for many years, and married another woman, joins in this action without objection. *Mardree* v. *Mardree*, 9 Ired., 295.

But it is contended by counsel for the plaintiffs that the male plaintiff waived his marital right in favor of the *feme* plaintiff when he refused to receive his wife's part of the proceeds of the sale of slaves, and said it belonged to her, and he wanted her to have it.

The counsel for the plaintiffs says: "Suppose that the title to an undivided one-ninth interest in the slaves did vest * * * in the said P. L. Ferrell (the male plaintiff), there is no reason why he may not have waived his right or have conveyed such interest in the slaves to his wife. * * * Whenever a contract would be good at law if made by a husband with trustees for his wife, that contract will be sustained in equity when made by the husband and wife without the intervention of the trustees. The husband, in our

case, plainly considered the wife meritorious, and there may have been not only a meritorious, but a valuable, consideration for his contract with her. At any rate, the Judge could not take upon himself to say that there was no consideration for such a contract. The defendant, by his answer, raises no such issue, nor asks for the jury to pass upon such an issue. *Taylor* v. *Eatman*, 92 N. C., 605; *Woodruff* v. *Bowles*, 104 N. C., 207."

Conceding that this would be so, if there were no creditors of the husband whose rights would be affected, the complainant alleges no such claim for the *feme* plaintiff, and the answer distinctly denies any interest in the wife—avers the ownership of the husband, and that he has been paid in settlement, and the evidence shows, and this is not controverted, that the defendant refused to pay to the wife unless the husband would pay defendant's claim against him. And, besides, the male plaintiff testifies that he "never assigned or released to anyone any part of said proceeds of sale," and joins the *feme* plaintiff in praying judgment therefor, and the cases cited by counsel have no application to this case.

By the law, as it then was, the title to the wife's interest in the slaves, vested absolutely in the husband, became liable for the payment of his debts, and there is no allegation in the complaint, nor is there any evidence that the defendant agreed to hold in trust for the wife. On the contrary, the answer denies any interest in the wife, and the evidence is that he refused to pay to the husband or his wife unless the male plaintiff would pay defendant's claim, and the judgment is erroneous.

Error.