*ELIZABETH BERRY v. THOMAS J. HALL.

*Evidence—Depositions—Fraud—Inadequacy of Price—Mental Capacity—Undue Influence—Judge's Charge—Trial by Jury.*

1. Testimony that a person is sane or insane at the time of trial is competent as tending to show the condition of his mind at a previous period, when some act was done by him, the character or validity of which depended upon his mental capacity, and such evidence does not become incompetent by the mere lapse of time, but the evidence must be left to the jury to judge of its weight.

2. A party offering to read a deposition as evidence must prove that he has given the notice of the opening of the deposition before the Clerk prescribed by *The Code*, § 1357, or show facts that would amount to a waiver by the opposite party of the statutory requirement.

---

* Head-notes by AVERY, J.

3. Even where one purchases the land of an insolvent debtor, and a controversy ensues between the *creditors* of *the vendor* and *the vendee* as to the character and validity of the conveyance, the fact that an inadequate price was paid is but a circumstance tending to show fraud, or a badge of fraud, that throws suspicion upon the transaction and calls for close scrutiny.

4. When *a grantor* seeks to set aside an executed conveyance on this ground, proof of even gross inadequacy of price, standing alone as a circumstance, in the absence of evidence of actual fraud or undue influence, is insufficient to warrant a decree declaring the conveyance void.

5. Where, in addition to the admitted disparity between the price paid and the real value, there is conflicting evidence as to the mental capacity of the grantor, or her subjection to or freedom from some fraudulent and controlling influence, the inadequacy of price is a circumstance to be considered by the jury with all other testimony tending to show fraud, undue influence or want of capacity.

6. If there be evidence tending to establish any fact that, if proven or admitted, would raise the presumption that the transaction was fraudulent, as alleged, the trial Judge may, of his own motion, and must, if requested in apt time, or if it be essential to a proper understanding of the application of the law to the testimony, instruct the jury as to its weight; but he is not at liberty to say to the jury that any fact, proved or admitted, that does not, in law, raise a presumption of the truth of the allegation of fraud, is a *strong circumstance tending to establish it*.

7. What effect is to be given to testimony competent in law to establish a fact must be left to the jury, but opinions of chancellors, when performing the functions of a jury, as well as a Judge, upon particular states of fact, must not be mistaken for rules of evidence and applied where the facts in evidence before a jury are analogous. This cannot be done without invading the province of the jury.

8. The rules as to the *quantum* and quality of proof required in certain classes of cases laid down in *Harding* v. *Long*, 103 N. C., 1; *Brown* v. *Mitchell*, 102 N. C., 347, and *Ely* v. *Early*. 94 N. C., 1, will be adhered to without modification.

This was a CIVIL ACTION, tried at the March Term, 1889, of the Superior Court of ORANGE County, before *Bynum, J.*

The plaintiff is the widow of Thomas P. Berry, and after his death a tract of land containing one hundred and six acres was allotted to her as dower out of the lands formerly belonging to him. The defendant bought other adjacent lands and the reversionary interest in the tract allotted to her. Afterwards, in pursuance of an agreement with the defendant, she conveyed to him her dower interest, and·in exchange he conveyed to her fifteen, acres of land adjoining, on which was a cabin, but only three acres of cleared land. He gave her twenty-five dollars in addition to the last-named tract of land for her dower.

Subsequently she brought this action, alleging that by fraud and undue influence the defendant had induced her to make an unconscionable trade, setting forth in detail the nature of the influence and the great inequality in the value and rental value of the two tracts of land exchanged. After the action was brought, on the 21st of August, 1886, an inquisition of lunacy was held, and the jury first summoned, returned as their verdict that she "may not be an idiot." This verdict was set aside by the Clerk and another jury was empaneled, who found that "said Elizabeth Berry is *non compos mentis* and incapable of attending to her affairs." The record of the Special Proceeding showing these facts was first put in evidence.

Both plaintiff and defendant offered evidence tending to show the value, and rental value, both of the dower tract of land and the fifteen acres conveyed in exchange for it. The witness estimated the dower to be worth from $700 to $1,000; the fifteen-acre tract, from $100 to $200; the annual rental value of the former to be from $20 to $50, and that of the latter, $15.

A great deal of testimony was offered for the plaintiff tending to show that she was of weak mind and acted under undue influence, and testimony especially as to the circumstances attending the trade.

The defendant, on the other hand, offered testimony tending to show that he agreed to make the trade after repeated solicitations from the *feme* plaintiff, who declared that she would not live in the dwelling-house on the land assigned her as her dower, and expressed a desire to live on the place conveyed to her. The defendant offered evidence to show that he furnished her wood and cut it up for her, and aided her otherwise. Defendant also offered testimony tending to show that the plaintiff was of sound mind and understoood what she was doing when she executed the deed that she seeks now to have cancelled; and especially that of the Justice of the Peace who wrote the deed of exchange.

Defendant finally offered *feme* plaintiff as a witness, who testified as follows: " I was a Peed; first married Boles, then Berry; Berry died; dower was laid off to me; balance of land sold; John Robin Berry bought it; Hall got it; don't know who laid off my dower; piazza of house was about to fall; nothing else wrong, so far as I know, except stables; they were not very good; Berry was seventy-four or seventy-five years old; land lay idle the year he died; Billy Gates worked it the next two years; don't know how many acres in cultivation; think John Robin Berry wound up the estate; think I left there latter part of winter and came back; McKee boys bargained for land; didn't run out enough and they backed out; Hall and myself exchanged land; he paid me $25; I got scared there; didn't know whether I could stay there or not; got most crazy at times; I named something about selling my part; thought I might be better satisfied on the other end of the plantation; don't remember sending word to Hall by anybody; I somewhat agreed to it; did not have my mind about it; Simpson went to see Hall; Hall came; Simpson told it over to Hall; Hall asked me if I considered it a bargain; I said I reckon so; Hall might have come next day; Jordan came with him day papers were written; I remember my brother Joel was there; Gates

was passing about; don't know who else was there; Jordan did the writing; don't know what I said to Jordan; don't remember saying anything to him; don't know whether the papers were read or not; no money was paid me that day that I know of; I stayed on there a long time; they ordered me to get out and I told them I would not; Hall said it was moving time; I did go over to the other house; I don't remember what Hall said; don't remember whether Simpson was there or not; I got troubled and pestered about a heap of things, and didn't know what to do for the best; I was dissatisfied; Hall made a proposition; I didn't know what he said."

Cross-examined, said: "Riley and Simpson came together; only came one time; Simpson told Hall, in my presence, what was said; I never said a word; I had two beds; had to let them go for something to eat; don't know why I made the trade, unless it was for the want of good sense; Hall held my money; he told me he could handle the money better than I could, and was more capable of trading than I; I reckon I signed the paper when Jordan was there, but don't know what it was."

Defendant then introduced Dr. A. C. Jordan, who was admitted to be an expert, and proposed to ask the following question: "From your knowledge and experience as a physician, after seeing the conduct of the plaintiff on the stand, and hearing her testimony, what, in your opinion, is the condition of plaintiff's mind at this time?" Plaintiff's counsel objected, upon the ground that the condition of her mind at this time has nothing to do with what it was at the time the trade was made. Objection overruled, and exception. Witness answered: "In my opinion it is good, for an illiterate woman like Mrs. Berry."

John Terrell, a witness for defendant, testified that he was on the second jury; that plaintiff's mind is better than it was then.

Charles Miller testified for defendant: "Was on the first jury of inquest; mind of plaintiff good for a woman of her age."

Plaintiff then introduced Mrs. Gates, who testified: "Plaintiff can be persuaded to do anything; don't think she has judgment enough to comprehend a trade like this; the land she sold had enough cleared land for her to make a living on."

Other witnesses testified that the land plaintiff sold was worth $800, and the land she got $200; that her mind was weak. One of them said nobody but a fool would make such a contract as she did.

After the inquisition of lunacy, a guardian was appointed for Elizabeth Berry, and he was made a party plaintiff and filed a complaint.

The plaintiff offered the last verdict in the special proceeding, and the defendant the first, which the Clerk set aside.

Plaintiff offered to read the deposition of three witnesses. The defendant's counsel objected on the ground that notice of one day had not been given, as required by section 1357 of *The Code*, and that the deposition had not been passed upon by the Clerk. The objection was sustained. The deposition was not allowed to be read, and plaintiff excepted.

Of the instructions asked by the plaintiff, the Court gave the following:

"1. That gross inadequacy of price is a strong circumstance tending, with others, as weakness of mind, to make out a case of fraud.

"6. That if the jury shall believe that plaintiff did not have capacity to understand the nature of the contract she entered into for the exchange of land with defendant, then the jury should answer the second issue, No."

The Court refused to give the following instructions submitted by plaintiff:

" 2. That when the inadequacy of consideration is so gross as to cause any fair-minded man to exclaim, 'Why, this inadequacy is so great that none but a fool would make such a contract, and no honest man would take advantage of it!'

" 3. That an unconscientious bargain, such as demands the interposition of a Court of Equity, is one where the inadequacy of price is so great as to cause a fair minded man to exclaim, 'Why, none but a fool would make this contract, and no honest man would take advantage of it!'

" 4. That if the jury shall find that plaintiff's mind was so weak that she was unable to guard herself against the imposition, or to resist the importunity of defendant, and she was imposed upon in consequence of this, then they should find that the deed from plaintiff to defendant was obtained by fraud, and that the great inadequacy of price may be considered as a strong circumstance in connection with this upon the question of fraud, and the jury should answer the first issue, Yes.

" 5. If the jury shall find that the value of the home place, or dower tract, was $800 or $1,000, and the fifteen-acre tract $150 or $200, then the inadequacy of price is so great as to amount to apparent fraud; and if they shall further find that the situation of plaintiff and defendant is so unequal as to give defendant an opportunity of making his own terms, then they should find that the deed was procured by fraud, and should answer the first issue, Yes.

" 7. That if the jury shall find that the price paid for her dower was out of all proportion to its real value, and that plaintiff was of weak mind, then this weakness and inadequacy, taken together, should be sufficient to constitute fraud, and they should answer the first issue, Yes."

The Court charged the jury further as follows :

· "The burden is upon the plaintiff to prove to the satisfaction of the jury that the exchange of the land was obtained from her by fraud, on the part of defendant.    Mere inade-

quacy of price is no ground for setting aside a contract, unless it be such as amounts to apparent fraud, or the situation of the parties be so unequal as to give one of them an opportunity of making his own terms. As to whether the inadequacy of price paid by defendant (if you find from the evidence it was inadequate) is a fraud, is a question for you, taking it into consideration with the other circumstances; and if you find it was so grossly inadequate as to shock the conscience of an honest man, it would be apparent fraud. Weakness of mind alone is not a sufficient reason for annulling the exchange of land on the ground of fraud, but it may be considered by the jury; with the other circumstances in this case, in arriving at their conclusion on the question of fraud on the part of defendant. If they shall find that plaintiff's mind was so weak that she was unable to guard herself against imposition, or to resist the importunities of defendant, and she was imposed upon in consequence of this, then they should answer the first issue Yes; and if they find from the evidence great inadequacy of price paid by defendant, they can consider that as a circumstance, with the other circumstances in this case, in arriving at a conclusion on the question of fraud. A party to a contract cannot have it annulled when the means of information are alike open to each party, and there is capacity on the part of each to understand what is done. If the party signing the deed knows what she is doing and to whom the deed is made, and what is conveyed and what is received in exchange, her mental capacity is sufficient to enable her to make a deed. The law does not require that a person should be able to dispose of property with judgment and discretion; it is sufficient if he understand what he is about; and it is proper for the jury, in this connection, to consider the condition of plaintiff's mind, as they shall find it to be from the evidence in this case, the circumstances of plaintiff and defendant,

and the value, as they shall find from the evidence, of the two tracts of land. If they find that plaintiff, at the time of executing the deed, had sufficient capacity to understand the nature and value of property disposed of, and what she was receiving therefor, and she freely signed it, she was capable of making the deed. The right to dispose of property at the will of the owner belongs to every one of sufficient capacity, and the jury must not annull the contract because they may think it imprudent, or such as a wise person would not make, or a man of nice honor consent to receive; and all bargains formally executed are binding, unless they are obtained by fraud, the suggestion of a falsehood, or the suppression of truth. But the jury may consider the inadequacy of price paid by defendant, if they find the price paid by him was inadequate on the question of fraud."

Plaintiff's counsel excepted to the refusal of the Court to charge as requested, and also for admitting improper testimony which was objected to. Motion for new trial overruled, and the plaintiff appealed from the judgment rendered

*Mr. John Manning,* for plaintiff.
*Messrs. J. W. Graham, A. W. Graham* and *Robert W. Winston,* for defendant.

AVERY, J.—after stating the facts: The objection to the competency of the physician's testimony as to the sanity of the *feme* plaintiff, after he had observed her demeanor as a witness, is clearly not tenable. It is a well settled rule that evidence that a person is sane or insane at the time of trial is competent as tending to show the condition of his mind at a previous period, when some act was done by him, the character or validity of which depended upon his mental capacity; and though months or years may intervene, such

evidence does not become incompetent by the mere lapse of time,. but the jury must be left to judge of its weight. 2 Greenleaf on Ev., § 690; *People* v. *Farwell,* 31 Cal., 576; *Freeman* v. *People,* 4 Denio, 9.

The plaintiff offered the depositions of three persons, when the defendant objected, on the ground that he had not received notice of one day of the opening of the depositions by the Clerk, as required by *The Code,* § 1357, and that the Clerk had not passed upon them. It is the fault of the plaintiff if a fuller finding of the facts would have shown a waiver of the statutory requirement by the defendant. The law makes it the duty of the Clerk to open the depositions sent to him by the commissioner in a sealed envelope, and to pass upon them, "after having first given the parties, or their attorneys, not less than one day's notice." The plaintiff should have demanded that this notice be given and acted on, and then the deposition would have been deemed, in the language of the law, "legal evidence."

Even when one purchases the land of an insolvent debtor, and a controversy ensues between the *creditors* of the *vendor* and the vendee as to the character and validity of the conveyance, the fact that an inadequate price was paid is but a circumstance tending to show fraud, and, at most, is to be considered a badge of fraud, that throws suspicion on the transaction and calls for close scrutiny. Bump. on Fraud. Conv. 76, 77 and 87; *Brown* v. *Mitchell,* 102 N. C, 369. When the grantor seeks to set aside an executed conveyance on this ground, proof of even gross inadequacy of price, standing alone as a circumstance, in the absence of evidence of actual fraud or undue influence, is insufficient to warrant a decree declaring the conveyance void. Bigelow on Fraud, p. 136, § 9; Kerr on Fraud and Mistake, 189; *Guster* v. *Thomas,* 1 Ired. Eq., 199; *Potter* v. *Everett,* 7 Ired. Eq., 152; *Green* v. *Thompson,* 2 Ired. Eq., 365; *Moore* v. *Reed,* 2 Ired. Eq., 580. "Inadequacy of price is not a distinct princi-

ple of relief in equity, but it depends upon the attendant circumstances which show fraud." *Potter* v. *Everett, supra ;* Story's Eq., § 249. Where it appears that certain confidential relations existed between the parties that need not be here enumerated, there is a presumption that the deed is fraudulent, and the burden is cast upon the grantee of rebut ing it. But where, in addition to the admitted disparity between the price paid and the real value, there is conflicting evidence as to the mental capacity of the grantor or her subjection to, or freedom from, some fraudulent and controlling influence, the inadequacy of price is a circumstance to be considered by the jury, with all other testimony tending to show fraud, undue influence, or want of capacity.

If there be evidence tending to show any fact that, if proved or admitted, would raise the presumption that the transaction was fraudulent, as alleged, the trial Judge may, of his own motion, and must, if requested in apt time, or if it be essential to a proper understanding of the application of the law to the testimony, instruct the jury as to its weight; but he is not at liberty to say to the jury that any fact, proved or admitted, that does not, in law, raise a presumption of the truth of the allegation of fraud, is a strong circumstance tending to establish it. *Ferrall* v. *Broadway,* 95 N. C., 551.

In the case at bar, as in many others that have come before this Court for review, several propositions submitted in the prayer for instructions are extracts from opinions delivered by the Court in chancery causes, and embody expressions as to the weight of the testimony in that particular suit in which the Judge, as Chancellor, discharged the functions now belonging, peculiarly, to the jury, as well as the duties proper of a Court, and often necessarily discussed the law and the weight of the evidence in the same connection. The reasons assigned in these opinions for giving more or less weight to any testimony were not

intended to be, and cannot, without invading the province of the jury by violating *The Code*, § 413, be adopted as rules to be laid down in the charge of the Court for their guidance. In the case of *Ferrall* v. *Broadway, supra,* the Judge below adopted the exact language of this Court in *Jackson* v. *Rhem,* 6 Jones' Eq., 141, in telling the jury that certain testimony offered in that cause to show that two persons, then dead, were lawfully married, "*ought to be so overwhelming as not to leave a doubt about the facts thus declared.*" After stating that the instruction was erroneous, the late Chief Justice SMITH, delivering the opinion of this Court, said: "What effect is to be given to testimony competent in law to establish a fact belongs exclusively to the jury to determine, as also the credibility of the witnesses who give the testimony. This is so universally recognized and acted on in the administration of the law, in tribunals constituted of a Judge and jury, and exercising their separate functions, as to need no support from references. The error committed in the charge is in imposing upon a jury the rule which a Judge, passing upon facts without a jury, prescribed for his own action as one which the jury is bound to obey." *State* v. *Williams,* 2 Jones, 257; *Wiseman* v. *Cornish,* 8 Jones, 218; *Flynt* v. *Bodenhamer,* 80 N. C., 205; *State* v. *Atkinson,* 93 N. C., 519.

We do not wish to be understood as modifying or relaxing the rule reiterated in *Harding* v. *Long,* 103 N. C., 1, and in *Brown* v. *Mitchell,* 102 N. C, 347, as to the quantum and quality of proof required in certain classes of cases, as where equitable relief is asked on the ground of mistake in the execution of a deed, or the action is brought to establish a resulting trust, because it is supported by a long line of adjudicated cases in our own reports and other recognized authority, and is founded upon reason and public policy. *Sandlin* v. *Ward,* 94 N. C., 490; *Ely* v. *Early,* 94 N. C., 1; *Kornegay* v. *Everett,* 99 N. C., 30. But opinions of Chancellors as to the weight of evidence in particular cases, when

they are often inconsistent with ideas of the testimony, expressed by the same Court or the same Judge upon a state of facts almost identical in some other suit, must not be mistaken for rules of evidence.  Where the facts tending to establish the right of a plaintiff to the equitable relief demanded *are in dispute,* the jury must pass upon the testimony, and the Judge has no right to express an opinion as to its weight, but may, and under certain circumstances must, explain the law as to presumptions arising on the evidence, or the rule as to the quantum of proof laid down in the cases last mentioned.

Without a discussion in detail of the numerous propositions submitted by the Judge below to the jury with the purpose of presenting the law applicable to every phase of the testimony, we may state, as our conclusion arising out of the principles already announced, that there is no error in his Honor's instructions of which the plaintiff can justly complain, and the verdict of the jury has made objections on the part of the defendant unnecessary.  The plaintiff might well have been content with the rule laid down by the Court, that gross inadequacy of price is a *strong circumstance.* tending with others, as weakness of mind, to make out a case of fraud; but the Court, at the plaintiff's request, submitted other propositions of law, perhaps still more favorable to her.

The Constitution gives the parties the right to trial by jury.  The statute intrusts to the jury, subject to the rules stated, the exclusive power to pass upon the weight of the testimony, and the Court can only review errors of law.  If, upon the admitted facts, it should seem to us that the plaintiff has made a bad bargain in exchanging a life estate in a tract of land worth from $800 to $1,000 for an estate of the same duration in another worth from $150 to $200, we could not for that reason alone question the validity of the transaction.  The jury, acting under instructions as to the law, perfectly fair to the plaintiff, have declared in their findings

that she had sufficient mental capacity to make a valid deed when she executed the conveyance to the defendant, and they had the advantage of watching the demeanor of all the witnesses, including the plaintiff, on the stand. There is no error, and the judgment must be affirmed.

Affirmed.