E. K. OSBORNE, Receiver, v. JOHN WILKES and Wife.

*Fraud—Husband and Wife—Evidence—Practice.*

1. M., a creditor of W., bought at execution sale a lot belonging to the latter for $7,000. In consideration of $3,000 advanced for the benefit of W.'s wife by S., her brother, and four notes for $3,000 each, signed by W. and his wife, secured by reconveyance in trust, M., in pursuance of a previous agreement with the attorney of S., conveyed the land to W.'s wife. W. and his wife conveyed the equity of redemption to S. by deed absolute upon its face to secure the payment of the $3,000 advanced: *Held*, that the transaction was not fraudulent in law, nor did the admitted facts raise a presumption of fraud; but it was proper for the Court to leave the jury to determine, upon consideration of all the evidence, whether the purchase was made for the husband in the wife's name in order to evade the payment of his debts, and whether she participated in the fraud, or she or her agent had notice of a fraudulent purpose or combination to defraud the husband's creditors.

2. When M., S. and W. and wife subsequently joined in conveying to a purchaser, who paid a price more than sufficient to discharge the whole lien of $15,000 held by M. and S., if there was no intent to defraud in the first purchase participated in by her, the profit realized by the sale might be invested in making the first payment for a second lot, for which a conveyance was taken in the wife's name, but a reconveyance was immediately executed by her and her husband to secure the notes given by them for deferred payments.

3. Though the wife cannot bind herself by contract for the purchase-money, and though she may have no separate estate, or may not bind what she has for its payment, still, if the vendor will take the risk of selling to her on a credit, neither the husband nor his creditor will be allowed to question the validity of a bond for title or deed made to her in good faith.

4. Where a married woman, not being a free trader, carries on the business of manufacturing on her own property, she may employ the husband as her agent to manage the business, and the fact that she employs him raises no presumption of a purpose to defraud his creditors; but it is competent, in trying an issue of fraud, to show his manner of conducting the business.

5. While creditors may subject, in a supplementary proceeding, the debtor's choses in action, including even a claim for compensation due for service rendered under an express or implied contract, they have no lien on his skill or attainments, and cannot compel him to exact compensation for managing his wife's property, or for service rendered to any person with the understanding that it was gratuitous.

6. Where many circumstances were shown tending to prove that conveyances were made to the wife to evade the payment of a certain debt due from the husband, it was competent for him to show in rebuttal that he had voluntarily allowed the judgment in favor of that creditor to be renewed after it was barred by the statute of limitation.

7. Where such creditor testified that he was informed by the debtor, in 1871, that he conducted the business in his wife's name to prevent his creditors from hampering him, the creditor acknowledged that he then had notice of the fraud, and where suit was brought and judgment rendered against the debtor alone in 1874, and under a supplementary proceeding begun soon after, though the receiver had power to bring an action in 1886 against husband and wife to have her declared a trustee, and to recover the land conveyed to her, with rents, and for specific articles of personal property alleged to have been bought with the husband's funds, or on his credit, such action, both for the equitable relief and the recovery of rents and specific personal property was barred in three years after he had notice of the fraud, according to his own testimony, as against the wife, who was a party only to the action brought by the receiver.

8. If the action had not been barred by the provisions of subsections 4 and 9 of section 155 of *The Code*, it would have been barred under the general section 158, and it was not error to tell the jury that the action was barred in three years, or in ten years.

9. Where execution was issued on another judgment and levied on the husband's interest in a gold mine for which he had paid $13,000, and the wife bought for $5 at the Sheriff's sale, but it appeared that the judgment, as well as the debts of some other creditors, had been subsequently discharged in full : *Held*, that mere inadequacy of price was not sufficient to raise a presumption of fraud, but the inadequacy of the price and the subsequent payment of the debt might be considered by the jury as suspicious circumstances tending to establish the fraud.

10. While there is a presumption that a deed from a husband, who is embarrassed with debt, conveying land to his wife is fraudulent, yet a deed from the Sheriff, or any other person, to her is presumed to be made in good faith, and the burden is on anyone alleging the contrary to prove it.

11. Where the Judge invited argument in the presence of the jury, when the plaintiff rested, as to whether he had made a *prima facie* case, and when he directed the defendants to proceed in the development of their case, and told the jury then, and subsequently charged them, that they must not be influenced in favor of defendants by his inviting argument, nor against them by his order to proceed with the introduction of their testimony : *Held*, not to be error.

12. Where the jury came into Court on Saturday of the first week of the term and announced that they could not agree as to the facts, it was not error for the Judge to say that there were two more weeks of the term, and he would give them plenty of time to consider, and then to direct the Sheriff to provide comfortable acommodations for them.

CIVIL ACTION, brought by the receiver appointed in a supplementary proceeding, under the order of the Court to have the *feme* defendant declared a trustee as to some property, and to recover specifically other property, which it was alleged had been purchased with the funds of or on the credit of the male defendant, her husband, and tried at September Term, 1889, of MECKLENBURG Superior Court, before *Clark, J.*

In the year 1869 The Rock Island Manufacturing Company became indebted to Coates Brothers in the sum of $24,806.78, for which said company gave several notes, with the defendant John Wilkes as surety. Judgment was rendered in the Superior Court of Rowan County in favor of Coates Bros. against said John Wilkes, at April Term, 1874, of said Court, and supplementary proceedings were begun on the 7th day of the following September. During the same month Wilkes was examined, after which there was a suspension of active proceedings until he was again ordered before the Clerk and examined in December, 1883. A num-

ber of other witnesses were also examined between that time and the 17th of September, 1885, when the plaintiff was appointed receiver.

The plaintiff brought this action in the Superior Court of Mecklenburg County. In his complaint he alleges three causes of action—

1. That defendant Jane Wilkes unlawfully and fraudulently withholds the possession of the property described in the second section of the complaint, because the plaintiff is receiver and said property is liable to the Coates Bros.' judgment. The plaintiff demands judgment for possession and damages for detention.

2. That the Alexander property was purchased by Jane Wilkes with the money and credit of John Wilkes, by a scheme or plan contrived to defraud the creditors of John Wilkes. The plaintiff demands judgment for a surrender of this property and damages for use and occupation.

3. That the Capps Mine is subject to the lien of said judgment, and the title thereof is in John Wilkes individually, or as partner of Jane Wilkes, and that Jane Wilkes claims said property because her money paid therefor. Plaintiff alleges that she had no claim to it, and demands judgment for the possession and damages.

The defendants positively deny all allegations of fraud, and aver that the property described in the complaint is the property of Jane Wilkes, and not in any way liable to the payment of the debts of John Wilkes. They further allege that the plaintiff's cause of action, if he has any, is barred by the statute of limitations. The first two allegations of fraud were treated as one, by agreement of the parties, and are known as the first cause of action, and that relating to the Capps Mine as the second cause of action.

It was in evidence that a certain lot in the city of Charlotte, known as the "Navy Yard" was sold under execution against the defendant John Wilkes, and bought by R. Y.

McAden for the First National Bank of Charlotte, to which Wilkes owed a debt of about $15,000.

The brothers and sisters of the *feme* defendant were residents of the State of New York, where she had a separate estate invested by trustees under marriage settlement. They subscribed or loaned three thousand dollars to be used for her benefit by her brother Adolphus Smedburg. He, through Mr. J. H. Wilson, an attorney, effected an arrangement, whereby in consideration of the payment to said bank of the three thousand dollars and the execution by Wilkes and his wife of several notes falling due annually for the remaining $12,000, the said Navy Yard property was conveyed to Mrs. Jane R. Wilkes and immediately reconveyed by her and her husband by mortgage deed to secure the payment of the notes as they should fall due. The equity of redemption was conveyed by Wilkes and wife to Smedburg as a security for the three thousand dollars. The Navy Yard property was subsequently sold at a profit, and out of the proceeds of sale the deeds to the bank and to Smedburg were discharged, leaving a balance in the hands of Mrs. Wilkes, a part of which was subsequently used in making the cash payment for a lot or tract of land in Charlotte, on which are located her dwelling-house and the Mecklenburg Foundry, and a portion of the profits were used for the purchase of machinery, etc., used in said foundry. The said lot was sold to her by S. B. Alexander for $9,000. She paid out of her profits $1,000, and she and her husband gave notes for $8,000, the balance of the purchase-money, taking title to herself but immediately joining her husband in a reconveyance to secure payment of notes for purchase-money. She has not paid all of the purchase-money yet. The foundry has been managed by the defendant John Wilkes for her since the year 1871, and she has realized a handsome profit. He draws checks and attends to the management; she allows him a support for himself and family out of the profits of the business.

The plaintiff offered circumstantial testimony tending to show that the purchase was made in the name of the wife, but really for the benefit of her husband, in order that it might be protected from the husband's creditors. The depositions of one of the plaintiffs, and that of one Frank W. Hall, were read in evidence, both deposing that John Wilkes told them that he conducted the business in his wife's name to save himself from annoyance by his creditors.

John Wilkes, McAden, Alexander and others testified to circumstances tending to show that the purchase and sale of the Navy Yard, and the subsequent purchase from Alexander, were made in good faith for the *feme* defendant.

It was in evidence for the plaintiffs that, after the defendant John Wilkes had expended many thousands of dollars for an interest in the Capps Gold Mine, including the land and valuable machinery erected thereon, his interest was sold at execution sale to satisfy an execution issued on a judgment in favor of one J. C. Burroughs, and bought by the *feme* defendant for five dollars. Burroughs also testified that, after the sale, the whole of his judgment was paid.

John Wilkes testified that he had been permitted by his wife to pay off a number of old debts which he owed. He denied making the alleged statement to the plaintiff Coates, or the witness Hall. He testified also that more than $8,000 of his wife's separate funds, held by trustees for her, had been invested in the machinery, etc., at the foundry. He further testified that he had made no arrangement, either with the bank, McAden, or the Sheriff, in reference to the sale or purchase of the Navy Yard property, and also to the good faith of the parties in the purchase of the Capps Mine.

One of many circumstances offered for plaintiffs was the fact that for nine years the business of Mecklenburg Foundry was advertised in the name of "John Wilkes, proprietor."

The following issues were submitted, without objection:

1. Was there any arrangement, agreement or understanding between the defendants John Wilkes or Jane Wilkes and the First National Bank of Charlotte by which the property conveyed to the bank by the Sheriff under the execution sale of May 23, 1870, was thereupon conveyed to defendant Jane R. Wilkes, for the purpose of preserving the property and business of John Wilkes and hindering, delaying or defrauding his creditors? Ans.: No.

2. Was the property conveyed to Mrs. Wilkes by the bank for $15,000 paid for out of the proceeds of sale thereof to Matthews in whole or in part, and if in part, how much of said proceeds were so used? Ans.: In part, $12,000 and interest.

3. Were the lots conveyed to the defendant Jane R. Wilkes by S. B. Alexander, trustee, and the machinery, tools and appliances made for and used in the foundry and shops purchased with the money and credit of John Wilkes, and was the title to said lots procured to be made to his wife for the purpose of defrauding his creditors of their just debts, and especially Coates Brothers? Ans.: No.

4. Is the plaintiff in this action entitled to the possession of the property known as the Capps Mine or any interest therein as the property of John Wilkes, defendant? Ans.: No.

5. Is the plaintiff's first cause of action barred by the statute of limitations? Ans.: Yes.

6. Is the plaintiff's second cause of action barred by the statute of limitations? Ans.: No.

The plaintiff requested the Court to instruct the jury—

1. That if the property in dispute was purchased from Alexander for the consideration of $9,000, one thousand dollars in cash, and the balance upon credit, for the payment of which Wilkes and wife executed their notes and mortgage upon the same for the payment of the notes, as set forth in the mortgage, and only $1,000 has since been paid thereon, and there is still due of the purchase-money over *eight*

*thousand dollars,* then the consideration of the contract of purchase did not move from Mrs. Wilkes, she has acquired no sole and separate interest therein as to the unpaid purchase-money, and the property is subject to the claims of the creditors of the husband, encumbered by the amount of the purchase-money yet due. This instruction was refused.

2. The defendants, both, in their answer to paragraph six (of answer) having admitted and averred that they invested the surplus after paying off the bank debt in the purchase of the Alexander property, now occupied by them as the Mecklenburg Iron Works, cannot be permitted to prove the contrary, and issue third must be found for the plaintiff. The Court refused to give this instruction.

3. That even according to the evidence of Mr. Wilkes on the trial a part of said surplus did go in part payment of the purchase-money of said property. The Court gave this · instruction.

4. That according to the evidence of Mr. Wilkes he was the agent of Mrs. Wilkes, and gave the operations of the Iron Works his exclusive attention and labors and large accumulations resulted therefrom, which were applied in enlarging the buildings, increasing the machinery and plant, supporting the household to the extent of $5,000 per annum and adding to the value of the Iron Works to the amount of $35,000; such accumulations did not become the separate property of the *feme* defendant, but enured to the benefit of John Wilkes, and the third issue must be found for the plaintiff. The Court refused to give this instruction.

5. That if any of the earnings of John Wilkes went to pay for the property conveyed to Mrs. Wilkes by Alexander, they will find for the plaintiff on issue·three [to the extent of said earnings.] Given by the Court as modified in brackets.

6. That if any residue or balance arising out of the sale by Mrs. Wilkes and the Smedburgs to Matthews went to pay

any part of the purchase-money to Alexander they will find for the plaintiff on issue three. The Court refused to give this instruction.

7. That a separate estate in a married woman must be proved by the instrument making it, and that there is no evidence here of any separate estate belonging to Mrs. Wilkes, defendant, sufficient to have a credit upon in the purchase of lands, and no evidence has been adduced showing that any charge upon such estate, if it existed, could attach to the transactions set up in the answer. The Court refused to give this instruction.

8. "A badge of fraud is a fact or circumstance calculated to throw suspicion on a transaction and requiring explanation." This instruction was given. If, therefore, there are any circumstances connected with the sale of the Navy Yard property on May 23, 1870, calculated to throw suspicion on that transaction and which circumstances, have not been satisfactorily explained by the defendants, the jury should answer the first issue Yes. The Court refused to give this instruction.

9. Fraud may be inferred from facts and circumstances tending to establish it, and less proof is required to establish fraud between husband and wife than between strangers. This instruction was given.

10. That stronger proof is required of parties claiming the benefit of transactions between husband and wife than from parties claiming benefits of transactions between strangers. This instruction was given.

11. The presumption is that the wife purchased with funds of the husband. Refused. Transfer of property from the husband to the wife is regarded with suspicion. Given.

12. Conversations of parties charged with fraud are admitted to prove the fraud. If there was any arrangement between the bank on the one hand, and either of the defendants, or any one of them, on the other, that the property should be

bid in by the bank and conveyed to Mrs. Wilkes, the answer to the first issue should be Yes.   Given.

13. If Wilkes has devoted his industry, his knowledge of the business, his skill in its management, his name and credit to the accumulation of property to be held by his wife for the use of himself and family, to the exclusion of his creditors, the jury ought to answer issue third Yes. [But not if he was merely acting *bona fide* as agent for his wife]. Given as modified, modification shown in brackets.

14. To make the execution sale fraudulent, it is not necessary that the Sheriff should be a party to the agreement that the property shall (should) be bid in or held for the benefit of the judgment debtor.   *Dobson* v. *Erwin,* 1 Dev. & Bat., 569.   Given.

15. If there was any arrangement between the bank and either John or Jane Wilkes to bring about the sale under execution so as to divest John Wilkes of the title and vest it in Mrs. Wilkes, and the effect of the transaction was to hinder and delay creditors, the law will regard such transactions fraudulent, though it may have been the intent of the parties to so hinder, delay, etc.   Given as a supplement to prayer No. 1 of defendants.

### DEFENDANTS' PRAYERS FOR INSTRUCTIONS.

1. As a general rule (amendment), in order to find that any of the transactions which are alleged to have been fraudulent were fraudulent as to the creditors of the defendant John Wilkes, the jury must first be satisfied by a preponderance of the evidence that the transactions were not only such as, in their effect, might delay or hinder creditors, but that they were conceived and carried on with the actual intent to hinder, delay and defraud creditors [subject, however, to the proviso, that if it was a combination and arrangement to do that act, etc.].   Given as amended, amendments in brackets.

2. That the jury, in order to find that any of said transactions were fraudulent, must also find that Jane R. Wilkes participated in said intent and purpose [or bought with notice thereof, either in person or through her husband, acting for her]. Given as amended in brackets.

3. That if the creditors, Coates Bros., discovered the alleged fraud more than three years prior to the commencement of this action, the first cause of action is barred by the statute of limitations. Given.

4. That if more than three years prior to the commencement of this action they had knowledge of facts and circumstances calculated to put a prudent man on inquiry, which if prosecuted would have disclosed the alleged fraud, then the law presumes a discovery of the alleged fraud at said time, and the first cause of action would be barred. Given.

5. That if said discovery was made more than ten years before this action was commenced, the first cause of action is barred. Given.

6. Repeat the fourth prayer as to the ten-year limitation. Given.

7. That if the jury should find that any of the personal property, estate or credit of John Wilkes was invested in the property described in the first cause of action, yet, if after said investment, more than three years elapsed before the commencement of this action, plaintiff is barred. Refused.

8. That if more than ten years elapsed under the facts and circumstances detailed in the seventh prayer, the plaintiff is barred. Refused.

9. That if the jury believe the evidence, the plaintiff's second cause of action is barred by the statute of limitations. Refused.

10. That if more than ten years elapsed after Coates Bros. obtained their judgment, and before this action was commenced, the plaintiff's first cause of action is barred by the statute of limitations. Given.

11. That if more than ten years elapsed after Coates Bros. obtained their judgment, and before this action was commenced, the plaintiff's second cause of action is barred by the statute of limitations. Refused.

The Court, in addition to special instructions given, charged the jury, in substance, as follows:

" It is the duty of the jury to weigh the testimony, etc., to remember if the Court omits or mis-recites any. The Court expresses no opinion on the facts, and the jury are not to draw any conclusions against the plaintiff by reason of the stoppage of the case against the defendant, nor against the defendant for requiring it to go on.

" The jury are not to consider that argument of counsel as to the effect of verdict on the present condition of the Mecklenburg Iron Works. The Court did not stop counsel in that argument, but now cautions the jury that they are not to consider that, nor the effect of their verdict upon anyone, but only to find the truth of the facts submitted to them on the issues.

" On the first issue the plaintiff claims that the sale of the foundry property on the 23d of May, 1870, was fraudulent, and as grounds for this contention offers evidence that sale was lpostponed from May 7th to May 23d; no readvertisement of property was made. John Wilkes was insolvent. The bank sold to his wife and took mortgage back.

" The books of the foundry went on without change.

" The admission of John Wilkes to Coates and to Hall that he had put the property in his wife's name, etc., as testified by them. On the hand, the defendants say the postponement of the sale to the 20th of May was from inadvertence, and they don't know whether re-advertised or not. They admit that Wilkes was insolvent, but deny, on the testimony of McAden and Wilkes himself, that there was any arrangement by which the property was to be sold to Mrs. Wilkes and a mortgage taken back for the purchase-money; that

the sale was made in good faith, and not for the purpose of defrauding creditors, and refer to the fact that afterwards the plaintiff's claim became barred by the statute of limitations and Wilkes renewed the debt by written acknowledgment.

" When the purchaser of the husband's property is his wife, the law looks through all disguises, and if the jury find on going to the bottom of the matter that it was an arrangement, no matter how arranged, they should answer the first issue Yes; otherwise, No. The burden is on the plaintiff to show such arrangement by preponderance, etc.

" The plaintiff claims on the second issue that the property conveyed to Mrs. Wilkes by the bank for $15,000 was paid for entirely out of the proceeds of the sale to Matthews; on the other hand, the defendants say that only $12,000 of the purchase-money and interest was paid out of the proceeds of that sale.

" On this point it is the duty of the jury to sift and weigh the testimony, and say whether in whole or in part, and if in part, how much of said proceeds were so used."

On third issue same charge was submitted substantially as on the first issue, except that the evidence raised a presumption of fraud in the purchase.

On fourth issue: " If the property known as the Capps Mine was bought by Mrs. Wilkes by an arrangement, contrivance, etc., and $13,000 worth of property was bought for $5, the sale would be fraudulent—the jury are to consider it in his wife, etc.—but if the sale was *bona fide*, and if it was not with consent of husband, etc., it is a good sale.

" The law views with suspicion the dealings of husband and wife, and the gross inadequacy of price, if bought with Wilkes' money, or by any contrivance, or if sold with intent to hinder and delay his creditors, and Mrs. Wilkes participated in such intent, or had notice of it, the sale was fraudulent, and you will answer the fourth issue Yes; otherwise, No."

The plaintiff excepted to the Court's refusal to instruct the jury as requested by plaintiff, and to his instructing them as requested by defendant, and to the charge as given.

In the trial of the cause all that part of the complaint which spoke of the Mecklenburg Iron Works was, by consent, treated as the plaintiff's first cause of action, and all that part relating to the Capps Mine as a second cause of action.

After verdict, plaintiff moved for judgment, notwithstanding the verdict, upon the grounds—

1. That the evidence as to the sale of the Capps Mine property under execution to Jane R. Wilkes was sufficient to raise a presumption of fraud, and that there was no evidence in the case to rebut such presumption.

2. That the evidence showed clearly that the defendant John Wilkes had at least an interest in all the property in controversy, by reason of his services and skill in operating the foundry and shops, from the earnings of which all the money which had gone to pay for the said property had been derived, and that his creditors were entitled to the benefit thereof upon a proper accounting.

3. That the evidence showed that the Mecklenburg Iron Works, as well as the old Navy Yard property, had been bought by Mrs. Wilkes largely on credit, and that, being a married woman and not a free trader at the time of such purchase, there being no evidence that the purchase was made on the faith of her separate estate, or that her separate property was charged therewith, such purchase enured to the benefit of her husband's creditors.

This motion was refused, and the plaintiff excepted.

Plaintiff then moved for a new trial upon the same grounds as set out in the motion for a judgment notwithstanding the verdict, and upon the additional grounds—

1. That the Court intimated an opinion that the plaintiff had failed to make out a case when he rested.

2. Because of the Court's language to the jury when the jury announced that they could not agree.

3. For failure to give the instructions asked for by the plaintiff, and for improper instructions given at request of counsel for defendants, and for error in the charge.

The motion was refused, and the plaintiff excepted.

There was judgment for defendants, from which plaintiff appealed.

*Messrs. B. C. Potts, G. F. Bason* and *W. P. Bynum,* for plaintiff.

*Messrs. A. Burwell, P. D. Walker, H. C. Jones* and *C. W. Tillett,* for defendants.

Avery, J.: When the plaintiff rested upon the supposition that the testimony offered by him was sufficient to be submitted to the jury as *prima facie* evidence of his right to recover, the Judge asked counsel in presence of jury, in effect, whether they did not think that the defendant might safely demur, and required both parties to give him the benefit of their views upon the question of law thus propounded? *Wittkowsky* v. *Wasson,* 71 N. C., 451; *State* v. *Brown,* 100 N. C., 519. After hearing the argument, the Court directed the defendants to proceed, and told the jury then, as they were subsequently cautioned in the charge, to bear in mind the fact that the Court had no right to intimate, and had not, in fact, intimated, an opinion in favor of the defendants by requiring argument, or against them by requiring them subsequently to develop their defence. The plaintiff had promptly objected, and excepted, when the inquiry was first addressed to his counsel.

The statute (*The Code,* § 413) prohibits the Judge who presides at the trial from expressing an opinion "in giving a charge to the jury, either in a civil or a criminal action," that a fact has or has not been fully proven. Neither the letter

nor the spirit of the law was violated. The jury were cautioned after the argument, and warned subsequently in the instructions given them, that they must draw no inference prejudicial to either of the parties from the request for an argument on the one hand, or the order made at its conclusion on the other. There was no good ground for complaint on the part of either. State v. Chastain, 104 N. C., 904; McCurry v. McCurry, 82 N. C., 296.

"This cause was given to the jury about 12 o'clock on Saturday of the first week of the term; about 5 o'clock P. M. of the same day they came into Court and stated to his Honor that they were unable to agree. He inquired whether they wished instructions upon any matter of law, and stated that he would be glad to give them special instructions upon any point of law about which they were in doubt, but if they were differing as to matters of fact in the case he could not help them. They responded that they were differing as to matters of fact, but thought it was utterly impossible for them to agree. The Court remarked that there were two weeks more of the Court, and as it was important to the parties that the jury should agree, he could give them plenty of time to consider the case. Upon further discussion and consideration of the case, he thought, they would be able to agree upon a just and proper verdict, and notified the Sheriff to provide them with comfortable quarters, and keep them together in charge of an officer. They were accordingly kept at a hotel in charge of an officer until Tuesday evening following, when they rendered the verdict recorded. No exception was taken to the remark of the Court until after the verdict."

The law anticipates a verdict in every case after the jury have had a reasonable time for consideration. State v. Ephriam, 2 Dev. & Bat., 171. The Judge had the power to discharge the jury in accordance with their request, or in the exercise of a sound discretion to detain them till the end of

the term. It is not error to tell them what the law provided
in reference to their detention, and direct that they should
be taken to comfortable quarters for further consideration
and discussion of the issues in reference to which they had
not agreed. *Hannon* v. *Grizzard*, 89 N. C., 115.

The jury, selected by the County Commissioners on account
of their high character, are supposed to have sufficient intel-
ligence to understand the extent of the Judge's power, and
to have such conceptions of their own duty that they will
not be driven to return a hasty and unjust verdict for fear
of being kept in comfortable quarters, but separated from
their families, for a few days or for two weeks, if they could
not sooner concur as to their findings. If the typical jurors
chosen under our law are so wanting in intelligence and
virtue that they can be swerved from the line of rectitude
by such considerations, then we should so reform our system
as to insure the selection of men who are guided by princi-
ple, and thus bring our practice and theory into harmony.

The remark of the Judge did not constitute sufficient
ground for exception, if objection had been made in apt
time. If the tendency of telling the jury the extent of the
authority vested in the Court was to induce them to agree,
neither party could say in advance that it was calculated to
foreshow or indicate the particular conclusion which it would
be proper for them to reach. It is unreasonable to entertain
this objection, made for the first time after verdict, if, from
the nature of the case, it would have been available as a
ground of exception at an earlier stage of the proceeding.

It is settled law in North Carolina that our statutes (chap-
ter 47 of *The Code*) impose no limit upon the "wife's power
to acquire property by contracting with her husband or any
other person, but only operate to restrain her from, or pro-
tect her in, disposing of property already acquired by her."
*Battle* v. *Mayo,* 102 N. C., 439; *Stephenson* v. *Felton,* 106 N. C.,
121; *George* v. *High,* 85 N. C., 99; *Dula* v. *Young,* 70 N. C.,

450; *Kirkman* v. *Bank,* 77 N. C., 394. The law restricts her *jus disponendi*—not her *jus acquirendi.*

Though a married woman may not be able to bind herself by a contract for the payment of the purchase-money, yet, if the vendor chooses to take the risk of collecting the debt from her, neither her husband nor his creditor will be allowed to question the validity of a bond for title or deed executed to her in good faith, or to claim profits accruing from a re-sale of any interest in land which she may have acquired under such agreement or conveyance. No complaint was ever made by McAden or the bank, and the purchase-money was ultimately paid and the lien upon it created by the mortgage discharged.

Where the wife has no separate estate, or where she does not bind such separate estate, as she has, to secure the payment of the purchase-money for other property bought by her on a credit, the contract, nevertheless, enures to her benefit, and she holds the property, when paid for, in her own right. 2 Bishop Married Women, § 80; *Burns* v. *McGregor,* 90 N. C., 222; *Knapp* v. *Smith,* 27 N. Y., 277. If, therefore, after R. Y. McAden had bought at execution sale the land of her husband, known as the Navy Yard property, the *feme* defendant contracted, through Smedburg, Wilson, or even through her husband, acting in good faith as her agent, for the purchase of the property in her own right, and Smedburg advanced $3,000 of the purchase-money, taking a conveyance absolute upon its face of her equity of redemption from her husband and herself to secure its re-payment, while McAden, for the bank, conveyed the property to her absolutely, taking at the same time a mortgage from her and her husband to secure the residue of the purchase-money ($12,000), due in four equal annual installments, these transactions vested in her the equitable title to the land, subject, first, to the payment of the notes for the purchase-money, with interest, and then to the amount advanced by Smedburg.

While her agreement to pay the purchase-money could not be enforced directly, she could, by joining her husband, make a valid conveyance of her own land, whether by an absolute deed or a mortgage. *Newhart* v. *Peters*, 80 N. C., 168. In this way she pledged the land as security for the payment of the residue of the purchase-money, though she did not bind herself personally.

Where land is conveyed to a married woman by a person other than her husband, every presumption is in favor of the validity of such a conveyance, as is the rule in reference to other deeds. 2 Bishop *supra*, § 138. The burden of proving the deeds of both McAden and Alexander to Mrs. Jane Wilkes to be fraudulent was upon the plaintiffs. She was not required to show affirmatively that she purchased with her own money or upon her own credit. A different rule might have applied if the land had been conveyed by her husband instead of by the purchaser at execution sale. While her buying on a credit from McAden does not *per se* affect the validity of the conveyance to her, the counsel for the plaintiff had the right, which they doubtless exercised, to insist before the jury that her purchase on a credit, when her separate funds held under her marriage contract could not be invested outside of the State of New York unless in pursuance of a judicial decree of the Courts of that State, was a suspicious circumstance, which with others tended to show that the husband used the wife's name with her assent to buy the property for his own benefit, and prevent his creditors from again selling it to satisfy his debts. All of the circumstances enumerated in the carefully prepared brief of plaintiff's counsel are, at most, but badges of fraud to be considered by the jury as tending to establish the purpose of the parties in the execution of the deed. The evidence as a whole was not even sufficient to raise the presumption in fact, much less in law, that the first conveyance (of October 14th, 1870) to Mrs. Wilkes was fraudulent.

*Brown* v. *Mitchell,* 102 N. C., 347; *Woodruff* v. *Bowles,* 104 N. C. 197; *Harding* v. *Long,* 103 N. C., 1; *Berry* v. *Hall,* 105 N. C., 154. There is no presumption arising from the testimony that she used the funds of her husband in making the purchase. The Judge in his charge enumerated carefully the circumstances relied on by the plaintiff as badges of fraud, and also recapitulated the testimony offered by the defendants in explanation. There was no error in giving or refusing instruction in relation to the first issue involving the character of the deed conveying the Navy Yard property to Mrs. Wilkes. The general principles already stated, if applied to the testimony bearing upon that issue, will dispose of all exceptions arising out of any view of it.

If the *feme* defendant, through her agent acting in good faith, had legal capacity to purchase, even on a credit, the Navy Yard property, it would follow that the fund realized as a profit from a subsequent sale of it would constitute a part of her separate estate, and she could use that fund, or $1,000 of it, in making a cash payment for the property on which the dwelling-house and foundry are now located, and the deed of Alexander to her would be presumptively valid as would be the mortgage deed executed by her and her husband, by which they reconveyed the land to Alexander to secure the payment of the residue of the purchase-money ($8,000). The same reason and the same authorities that were offered to sustain the presumptive validity of the transaction with McAden applied to the latter trade with Alexander. The consideration of one thousand dollars paid down did move from Mrs. Wilkes, as it constituted a part of her legitimate profit from the former sale, if her deed for the Navy Yard property was valid.

Neither of the deeds was fraudulent as to the *feme* defendant unless she participated in the fraud, or she or her agent had notice of a fraudulent purpose or combination to hinder, delay or defraud the creditors of her husband

before she purchased. *Battle* v. *Mayo* and *Woodruff* v. *Bowles, supra.*

Without discussing them in detail, we have disposed of the exceptions to the refusal of the Court to give the instructions asked, numbered respectively 1, 3, 6, 7, 8, 11, 15, and those relating to instructions requested by the defendants upon the same subject numbered 1 and 2. The objection urged in the plaintiff's brief, that the verdict was against the weight of the evidence, is one that is addressed entirely to the discretion of the *nisi prius* Judge when made below. His refusal to grant a new trial on that ground is not reviewable, and such motions will not be entertained when made for the first time in the appellate Court. *Whitehurst* v. *Pettipher*, 105 N. C., 40. An appeal lies only from the refusal to set aside the verdict on the ground that there was no evidence, or not in law sufficient evidence to support it.

Inadequacy of price is not of itself in any case sufficient ground for setting aside a conveyance as fraudulent, but is a suspicious circumstance to be considered in connection with other testimony tending to show fraud in procuring its execution. *Berry* v. *Hall, supra; Potter* v. *Everett*, 7 Ired. Eq., 152; Bump. on Fraud. Con., p. 36; J. Kerr on F. & M., 189. Mrs. Wilkes had the same right to buy her husband's land with her funds when sold at execution sale, or from a purchaser at such sale, that any other person had. If additional testimony were offered tending to show a fraudulent combination to prevent a fair competition of bidders on the part of her husband and others, in which she participated, or of which she had notice before buying, then the jury would be justified in considering the inadequacy of the price paid for the Capps Mine in connection with other badges of fraud, and with the fact that she was the wife of the debtor. Where the husband contracts to sell to the wife or convey property to her in payment of an alleged debt, or for an alleged money consideration paid by her, the burden is upon her to show

the *bona fides* of the transaction. *Brown* v. *Mitchell, supra.* But where she claims under a Sheriff's deed and an execution sale, there is no such presumption as would arise from a direct sale and conveyance by him to her. The subsequent payment of the whole debt due the plaintiff in execution by some one, and the fact that the husband was the defendant in execution, were the circumstances relied on, in connection with the inadequacy of price, to establish the alleged fraud. If these, standing alone, were sufficient to be submitted, as the Judge did, to the jury to show a fraudulent combination, it will not be insisted that they are strong enough to raise such a presumption of fraud as would, without explanation, justify the Court in instructing the jury to respond Yes to the fourth issue. We are aware that there is some apparent conflict of authorities in those cases where the property has been sold at judicial sale, as to the weight of certain evidence tending to establish fraud, but it is now settled that, since separate Courts of Equity were abolished, the Judge has no right to instruct the jury as to the weight of evidence when it is not sufficient to raise a presumption of the truth of the allegation of fraud. *Berry* v. *Hall, supra; Ferrall* v. *Broadway,* 95 N. C., 551.

Under our present *Code,* a married woman may purchase property and carry on business on her separate account, and through her husband as agent. The fact that she employs him and supports him does not raise a presumption of fraud, though it is competent in trying the issue to show his manner of conducting the business. *Brown* v. *Mitchell, supra;* Abbott's Tr. Ev., 171 and 172; *Rankin* v. *West,* 25 Mich., 195; *Kluender* v. *Linch,* 4 Keyes (N. Y.), 363. Her title to the property is not impaired, nor do his creditors acquire any interest in the profits because he gives his services without other compensation than an indefinite allowance applied by her permission to the payment of his expenses. *Abbey* v. *Deyo,* 44 N. Y., 345; *Knapp* v. *Smith, supra; Gage* v.

*Douchey*, 34 N. Y., 293; *Burkley* v. *Wells*, 35 N. Y., 518. In *Manning* v. *Manning*, 79 N. C., 293, the right of the wife to hold the husband, as her agent, to account for the rents and profits of her lands, though received by him without objection, was distinctly recognized.

While creditors may subject one's choses in action, including even a claim for compensation due him for his services, under an express or implied contract, in a supplementary proceeding, they have no lien upon his skill or attainments, nor can they compel him to exact compensation for managing his wife's property, or collect from her as on a *quantum meruit* what his services were reasonably worth. 2 Bishop, *supra*, §§ 453, 454, 299, 300. She may remunerate him by furnishing him a support. He may, if he choose, serve her without compensation. 2 Bishop, *supra*, § 439; *Corning* v. *Flower*, 24 Iowa, 584. Indeed, a creditor cannot collect from any person compensation for services rendered by his debtor with the understanding that it was gratuitous. 2 Bishop, *supra*.

We think, therefore, that there was no error in the refusal of the Court to give the plaintiff's instruction numbered 4, nor in the amendments made to those numbered respectively 5 and 13. The plaintiff certainly has no just ground to complain of the charge given upon that point, and the defendants, in view of the verdict rendered, have no reason for objecting.

In the trial of issues like those submitted in our case, where so many competent circumstances are adduced as badges of fraud, it necessarily opens the door quite as wide for the introduction of evidence in rebuttal. When so much testimony had been offered for the purpose of showing an intent on the part of Wilkes and his wife to evade the payment of the debt to Coates Bros., it was competent to show in rebuttal that, with full knowledge that the judgment was barred by the statute of limitations, he had voluntarily allowed them to renew it.

108—43

The *feme* defendant was not a party to the suit brought in the Superior Court of Rowan County by Coates Bros., on the 20th of March, 1874, and in which judgment was recovered and proceedings supplementary to execution were instituted. The affidavit, which was the basis of the supplementary proceedings, was dated September 7, 1874. In obedience to an order dated September 24, 1874, the defendant John Wilkes appeared before J. M. Horah, Clerk of said Court, during the same month and was examined. No further action was taken till the 21st of April, 1883, when another order was issued upon a similar affidavit, in obedience to which John Wilkes was again summoned before said Clerk and examined, first on the 8th of May, 1883. John Wilkes again appeared, on notice, December 17, 1883, when he and F. W. Hall and others were examined before said Horah, Clerk. The deposition of George M. Coates, Jr., was taken before a Commissioner of Affidavits on the 3d of January, 1884, to be read in said proceeding. From an order of *Graves, Judge,* refusing a motion to appoint a receiver upon the testimony of the witnesses examined, and to compel the defendant John Wilkes to produce the books of the Mecklenburg Iron Works, kept by or under the direction of John Wilkes for his wife, Mrs. Jane Wilkes, the plaintiffs appealed, and the judgment below was reversed. *Coates* v. *Wilkes,* 92 N. C., 376. From an order made by *Montgomery, J.,* at August Term, 1885, and subsequently amended, appointing the plaintiff Osborne receiver, and empowering him to bring suit, etc., and restraining Mrs. Wilkes, who was not a party, from disposing of or transferring certain property, the defendant John Wilkes appealed. *Coates* v. *Wilkes,* 94 N. C., 174. This Court declared that it was error to order that she be restrained from transferring property claimed by her, when she was not a party and had not been ordered to appear for examination, or otherwise notified of the decree, though, in other respects, the judgment of the lower Court was affirmed.

Accordingly, the plaintiff, as receiver, caused the summons in this action to be issued against the defendant John Wilkes and his wife on the 20th day of August, 1886.

The exceptions to the charge given by the Court at the request of the defendant, raised the question whether what was called the first cause of action, brought for the recovery of the Mecklenburg Foundry property, had been barred by the lapse of time since the right of action accrued. The plaintiff in his complaint demanded judgment that the deed conveying the Mecklenburg Foundry property to the defendant Jane Wilkes be declared void, and that she be declared a trustee of said property for the benefit of the creditors of John Wilkes, and that she be required "to surrender the said lot, buildings, machinery and all things thereunto belonging or used in said foundry and shops to the plaintiff as receiver," etc., and that she and John Wilkes be "decreed to account with the plaintiff for use and occupation, rents," etc. The case was one solely cognizable in a Court of Equity, and therefore, without regard to the amendment of 1889, the plaintiff's right to have the defendant Jane Wilkes declared a trustee for Coates Bros., was barred three years after the discovery of the fraud by Coates Bros., or three years after, by the exercise of reasonable diligence, they might have discovered it. *The Code*, § 155, subsec. 9; *Day* v. *Day*, 84 N. C., 408; *Lanning* v. *Commissioners*, 106 N. C., 511; *Hulburt* v. *Douglas*, 94 N. C., 122; *Jaffray* v. *Bear*, 103 N. C., 165. This action is brought with the special view of declaring Mrs. Wilkes, who was not a party to the former action or proceeding, a trustee, and therefore, to her plea of the statute of limitations, it is not sufficient to reply that this action (as in *Hughes* v. *Whitaker*, 84 N. C., 640) was brought in aid of the former suit. The right of action accrued as to her when the fraud was, or might, by due diligence, have been discovered. If the testimony of George N. Coates, Jr., a member of the firm of Coates Bros., be taken as true, John Wilkes

told him, in the year 1871, that he conducted the business in his wife's name "because his creditors would hamper him" if he conducted it otherwise. If Coates Bros. had notice that Wilkes used his wife's name in 1871 to avoid embarrassment on account of his debts, being *then* creditors, a cause of action accrued at that time in their favor. After their right to equitable relief was barred by the lapse of time, a receiver appointed at their instance could not recover when the statute was pleaded by Mrs. Wilkes.

In so far as the action was prosecuted ·for the purpose of recovering from the *feme* defendant the possession of specific articles of personal property, or of compelling her to account for the use of the personal property, or the rent of real property, it was clearly barred after the three years from the time when the right of action accrued. *The Code,* § 155, subsec. 4.

If the first cause of action had not been barred in three years under the subsection of section 155 of *The Code* as to Mrs. Wilkes, she might clearly have availed herself of the general provision (*The Code,* § 158), and therefore it was not error to tell the jury that the first cause of action was barred within ten years after the right to bring it accrued. The cases of *Dobson* v. *Erwin, Bridgers* v. *Moye,* and others cited, were decided long before either of the three statutes upon which the rulings of his Honor below rested were enacted as a part of the Code of Civil Procedure in 1868. Before that time there was no. limit, short of twenty years, to the right to follow the funds of a debtor fraudulently invested in the name of another, except where the statute in relation to the abandonment of an equity (Rev. Code, ch. 65, § 19, Laws of 1826, ch. 28, § 2) applied.

With full and fair instruction the jury, as it was their province to do, passed· upon the good faith of the parties interested in the transactions in reference to the sale of the "Navy Yard property" and the lot on which the Mecklen-

burg Foundry is located, as well as in the purchase of the Capps Mine. There was testimony tending to throw a cloud of suspicion over the treaties that culminated in the conveyance of each of the three tracts of land to the *feme* defendant; but this may always be expected where the wife purchased property, making little if any outlay of money, and, after placing her husband as agent in charge of it, realizes a large profit or receives an extraordinary income. There was no testimony offered by the plaintiff that raised a presumption of fraud, in either purchase, so as to shift the burden of proof to the defendants.

We have not adverted to the large number of cases cited, and for the most part decided by the Supreme Court of Pennsylvania, in which a different view is taken as to the right of married women to acquire property by purchase during coverture, and in reference to the weight of evidence bearing upon issues of fraud. We must be governed by our own Constitution and laws, and by the construction given to them by this Court. The adoption of our Constitution embodying especially Article 10, sec. 6, and the enactment immediately thereafter of chapter 47 of *The Code* (Laws of 1868–'9, ch. 122), marked a new era in our law affecting the rights of married women.

Having thus disposed of all of the assignments of error that were insisted on here, we conclude that the judgment of the Court below must be affirmed.

DAVIS, J., did not concur.

*Per curiam.* Affirmed.